STATE of Missouri, Respondent,

v.

Walter Emmett DANIELS, Appellant.

No. 48391.

Supreme Court of Missouri,
Division No. 2.

July 10, 1961.

Gene R. Martin, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Richard Farrington, Special Asst. Atty. Gen., for respondent.

LEEDY, Presiding Judge.

Convicted under the habitual criminal act of the felony of stealing a motor vehicle, appellant (Walter Emmett Daniels, hereinafter referred to as defendant) prosecutes this appeal from the judgment sentencing him to five years' imprisonment in the penitentiary, that punishment having been determined and imposed by the trial judge under § 556.280 and § 560.161 (these and all other statutory references are to RSMo 1959 and V.A.M.S., unless otherwise noted). In the absence of a brief on defendant's part, we look to his motion for new trial for his assignments of error, and consider in chronological, rather than numerical, order such of them as are sufficient to preserve alleged trial errors for appellate review.

The motion for new trial assigns error "in failing to sustain defendant's motion to declare a mistrial and to discharge the jury because of misconduct of a deputy sheriff who was assigned to keep the defendant under guard in wearing a side arm upon his person, open and visible to the jury," the contention being that such "conduct created an atmosphere prejudicial to the accused, and caused the jury to be prejudiced against, and apprehensive of the defendant," etc. The motion to declare a mistrial was made upon the reconvening of court for the afternoon session on the first day of the trial following the empaneling and swearing of the jury to try the case at the morning session. After first asking that the rule as to witnesses be enforced (which was granted), defendant's counsel then sought to raise the present point in the manner following:

"Mr. Martin: One other matter before we proceed further, *it's been called to my attention,* Your Honor, that during the voir dire examination the deputy sheriff who has this defendant in charge has been in the court room with a side arm visible to the jury panel and everyone else. It has not been covered by clothing of any nature, no coat was worn, and it is defendant's contention [here followed assertions concerning the supposed resulting prejudice]. We ask that the jury—that there be declared a mistrial and this jury be discharged. (Emphasis supplied.)

"The Court: Overruled."

Such is the record before us, so that (no evidence having been offered on the hearing of the motion for new trial) the only factual support for the assignment now under consideration appears inferentially (if at all) from defendant's counsel's foregoing objection or oral motion to declare a mistrial. Of course, an objection does not constitute evidence of the facts stated in it. Nor do we know whether the court's ruling was or was not based on its own knowledge of facts contrary to those thus asserted. But if the record be deemed sufficient to support the inference that the deputy sheriff did, in fact, wear a weapon in the manner claimed, we think such circumstance, standing alone, and in the absence of facts pointing more directly to probable prejudice, is insufficient whereon to predicate reversible error. "While care should be taken to prevent the creation of an atmosphere prejudicial to [the] accused, courts may take all reasonably necessary precautions for the maintenance of order during the progress of a trial * * * and for the retention of the custody of an accused (citing cases) * * *." State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22, 31.

We turn now to the challenge of the sufficiency of the evidence to make a case, or to support the verdict. Briefly summarized, the state's evidence was to the following effect: Mrs. Louise DeKeyser left her 1955 Chevrolet sport coupe parked (with key in switch in accordance with custom) in the attended parking lot at Gaetano's Restaurant, 5th & Oak Streets, in Kansas City, about 6:55 p. m., on July 22, 1959. She and her 16-year-old son went inside, ate dinner, and returned to the lot about an hour later, and found the car was missing. Thirty minutes earlier the attendant had noticed it being removed by a young man whom he at first mistakenly took to be the owner's son. About 10 p. m., this car was proceeding northwardly on old Highway 169 when in negotiating a curve near Nashua it went off the pavement, struck a utility pole and stop sign and came to rest near a structure adjacent to the highway which served as a filling station, grocery, and dwelling. The occupants heard the crash, got up, dressed and went outside to investigate. They found the car to be facing south—the opposite direction from which it had been travelling; defendant was sitting on the ground beside it, holding his side, and complaining that both his side and arm hurt. He appeared to be "excited and dazed." The right side

of the car had been completely sheared off; the top was damaged, and the door on the driver's side was bent open. "The whole car was a total loss." Later defendant stood up, and was holding his side and leaning against the car, when someone suggested that the patrol be called, whereupon he walked off up the road. Subsequently, two other neighbors who had heard the crash detected defendant walking between their houses, and they returned him to the scene.

When questioned by a patrolman at the scene, and as accounting for his presence there, defendant stated he had been hitch-hiking, and had been picked up by someone else who was driving the car. When asked where the driver was, defendant stated that when the car struck the utility pole the driver got out and ran away. He was unable to furnish a description of the supposed driver. A search of the surrounding territory was made, and inquiries directed to the persons assembled at the scene, as to any other person that might have been in the automobile, but without avail. Two police officers testified, without objection, that on the next afternoon they were re-turning defendant to Kansas City from the Clay County jail, and during the course of the trip defendant told them he arrived in Kansas City on the 20th of the month, and had been staying at the Congress Hotel on 9th Street; that he had been doing some drinking, and that "on the 22nd he decided to leave town, that he went down to the hotel, checked out of the hotel, took his clothing and started walking north down towards 5th Street * * * when he got down around the vicinity of 5th and Oak he observed this car parked with the keys in the ignition and he decided to take the car. He got in the car and drove across the Intercity Viaduct to Kansas City, Kansas, * * * where he had some more drinks, and he then left there and drove * * * across Fairfax Bridge, on north out of Kansas City, Kansas, * * * stopped * * * and had some more drinks, and then he started north * * * thought he was on 71 Highway. He was planning to drive north to St. Joseph, Missouri, and apparently got on the wrong road, and * * * he couldn't recall anything that caused the accident he was involved in or any part of the accident."

Defendant did not testify, but offered two other witnesses—a colored parking lot attendant at Gaetano's, and one of the men who lived above the filling station at Nashua, part of whose testimony appears in the foregoing statement. Neither witness disputed or rebutted any material fact connecting defendant with the crime charged.

The foregoing outline of the evidence is sufficient to demonstrate that the court did not err in submitting the question of defendant's guilt to the jury, and that the verdict of guilty is amply supported.

■ The court permitted the owner to show that the value of the stolen car was $1,295 or $1,300. This was objected to on the grounds of irrelevancy and immateriality and "as an attempt to inflame the minds of this jury." The objection should have been sustained for the reason that under subdivision (2) of subsection 2 of § 560.161, if the property stolen consists of a motor vehicle, then, regardless of its value, the offense is a felony. But it does not follow that because of the admission of proof of value, the defendant was thereby prejudiced. On the contrary, in the circumstances of this record, we deem it to be harmless error. As was said in State v. Alberson, Mo., 325 S.W.2d 773, 776 ( a prosecution under the statute here involved for stealing a motor vehicle), "[T]he showing as to the monetary value of the car could have had no effect, in a legal sense, upon the issues in the case, and this being true, it follows there could have been no resulting prejudice to defendant."

■ Defendant sought to cross-examine Mrs. DeKeyser for the purpose of impeachment, as to her answer in a deposition in relation to what the attendant said to her (concerning the disappearance of the car)

when she returned to the parking lot and discovered the car was gone. This on the theory that such answer conflicted with her testimony on direct examination at the trial in relation to that subject. We do not regard the matter as being of enough consequence to justify developing the details of the incident, it being sufficient to say that the proposed impeachment went to a purely collateral matter, and hence to be limited in the discretion of the trial judge. No abuse of discretion appears, and the claim is denied.

■ Defendant also complains of the court's refusal to permit him to offer and read in evidence certain portions of the petition in the civil action in which the deposition referred to above was taken. That action was one brought in Mrs. DeKeyser's name by her insurance carrier against the operators of Gaetano's Restaurant for conversion. It appears that this very subject had been under discussion at a pretrial conference where it was developed that the action, though in the owner's name as plaintiff, was brought as "an insurance subrogation claim." The court, while recognizing that ordinarily a "party is bound by the statements made in the petition," nevertheless sustained the state's objection to the tendered portions of the petition charging that defendants therein had converted the automobile to their own use, and indicated the reasons for such ruling as follows: "I think under the circumstances she [Mrs. DeKeyser] is in no way responsible for this petition being filed, except by way of cooperating with, or permitting the insurance company to use her name in bringing the suit. Now, if there is anything in her deposition whereby she claims that someone else converted it or took the car, I will permit you to use that, but I will sustain the objection." Based on the facts thus found, and there being no countervailing evidence, the court's rejection of the offer was proper.

It is next charged that the court should have declared a mistrial when a highway patrolman, answering the assistant prosecu-

tor's question "before the defendant could object," stated that "no one else had been found who had stolen the motor vehicle in question." The record affords no factual basis for this charge. The record is to the contrary, it affirmatively appearing from the transcript that defendant's objection to the question was sustained, and no such answer was ever made.

■ Defendant complains of those portions of two of the state's instructions (No. 1, its main instruction and No. 7, submitting forms of verdict) wherein he was referred to as "Walter Emmett Daniels, also known as Walter Everett Daniels, also known as Walter Daniels." The grounds of complaint: That there was no evidence of any aliases before the jury, and therefore such references amounted to a comment by the court on evidence not before the jury, and inferring that defendant had a prior criminal record; that they were "improper, violated the purpose and intent of the legislature with reference to trials under the Habitual Criminal Act, and that the jury should not be informed of the prior criminal record of a defendant," by reason of all of which the jury was caused to be prejudiced against defendant. Defendant was so referred to both in the caption and the body of the information (except the word "alias" was used in place of "also known as"), which was drawn under and invoked the provisions of our habitual criminal statutes (§ 556.280 as repealed and reenacted, Laws 1959, S.B. 117, § 1 and § 556.290). Under the procedure prescribed by this newly revised act, the issue of an accused's previous conviction or convictions is triable by the court out of the hearing of the jury and prior to the submission of the substantive offense, and this was followed in the case at bar, the trial court having expressly found on such hearing that defendant had been previously convicted of two felonies as alleged in the information. The aliases referred to appeared in the documentary evidence offered in connection with such previous convictions, but, as noted, this evidence was not before the jury, and so refer-

ence to such aliases in the instructions was pointless and served no purpose, if not actually erroneous.

It is true that the use of an alias in instructions in a criminal case where unauthorized by the evidence has been criticized. State v. Richards, 334 Mo. 485, 67 S.W.2d 58, 62. Nevertheless, as pointed out in State v. Loston, Mo., 234 S.W.2d 535, 539, it does not appear that this court has ever reversed a conviction because of such a reference. It will be noted that the aliases here involved are confined to the middle name—"Everett" in one instance, and the want of a middle name in the other, the surname, Daniels, remaining unaffected. In this situation the trial court in the first instance, and this court on review, would be reluctant to ascribe to the jury a disposition to imply because of such references that defendant belongs to the so-called criminal class referred to in D'Allessandro v. United States, 3 Cir., 90 F.2d 640, 641. While not sanctioning the use of these aliases in the circumstances of this record, we nevertheless do not regard the error as being of such serious or critical character as to warrant reversal, this under the sensible rule applied in Petrilli v. United States, 8 Cir., 129 F.2d 101, 104, which we adopt, as follows: "But where, as here, a reference to the aliases has crept into the proceedings, the situation on appeal will not be controlled by the application of any abstract principle, but by a concrete appraisal of the significance of the incident in relation to the processes of the trial as a whole." Measured by this test, and in view of the proof on the ultimate issue of defendant's guilt, including the latter's own admission thereof, we disallow the assignment.

■ Without lengthening this opinion by contrasting the particular language and forms of the several instructions to which we are about to refer, it may be said that it was not error to refuse defendant's instruction "A", this for the reason the subject-matter thereof (presumption of innocence and reasonable doubt) had already been fairly and fully covered by state's instruction No. 5, the latter having consisted of expressly approved forms of submission. State v. Hudspeth, 159 Mo. 178, 60 S.W. 136; State v. Turner, Mo., 320 S.W.2d 579, 584. Other assignments are made in relation to other instructions, but they are too general to preserve anything for review, and so will not be noticed.

■ In the closing argument the assistant prosecutor argued as follows: "You don't have to believe everything he [defendant's counsel] says, you took an oath, ladies and gentlemen, when you sat as jurors in this case, to truly and fairly try the facts and issues in this case and render a fair verdict and why in the world should you go out on a limb for a man like this. In a sense, if you let this man go free you have violated your oaths as jurors, I feel." At this juncture the following objection was interposed by defendant's counsel: "May it please the Court, that is highly improper in a case such as this and I ask the Court to reprimand Mr. Gant for it." The court announced that the objection was sustained, then followed defendant's request or oral motion that a mistrial be declared and that the jury be discharged "for that type of argument." This was overruled. A wide discretion is entrusted to the trial courts in the matter of controlling, as well as appraising the effect of, argument. As noted, defendant's objection was sustained, which the court regarded as sufficiently corrective under the circumstances, and that the incident did not call for the drastic action of declaring a mistrial as demanded by defendant's motion. The record fails to show any abuse of the trial court's discretion in so ruling.

■ Another ground of the motion for new trial assigns error in the court's failure to declare a mistrial "when the jury failed to return a unanimous verdict." This contention is based on the response of a woman juror, Mrs. Virginia R. Brannock, when, upon return of the verdict of guilt duly signed by the foreman, the court polled the jury at the request of defendant's counsel.

The transcript reflects the following in that connection:

"The Court: As your names are called just indicate if this is your verdict by saying 'Yes', or 'No' if it is not your verdict.

"The Clerk: Virginia Brannock.

"Mrs. Brannock: (Nods.)

"The Court: Your answer is yes?

"Mrs. Brannock: (Nods.)

"The Court: That is your verdict?

"Mrs. Brannock: With reservations.

"Mr. Martin: I beg your pardon?

"Mrs. Brannock: With reservations.

"The Court: Call the rest of them."

Here followed the call of the names of the other jurors, all of whom responded, "Yes." Whereupon the following occurred:

"The Court: Is there anything further? As I say, I want to thank you, and I will ask you to return to the jury room on the third floor tomorrow at 9 o'clock, if you will, please. Thank you very much for your services.

"Mr. Martin: I would like to have 30 days to file a motion for new trial on this.

"The Court: All right."

It will be noted that there was neither motion to declare a mistrial, nor response to the court's inquiry as to whether there was "anything further," or, in short, any challenge whatever of the validity of the verdict based on Mrs. Brannock's response. It would be unreasonable to imply from the somewhat cryptic answer of Mrs. Brannock that the verdict had not been assented to by her, or that her concurrence had not been given freely and voluntarily. True, it cannot be determined at this late date precisely what was meant by the words "with reservations." But defendant was apparently satisfied with the result of the poll as indicating complete unanimity of judgment and action on the part of the jury. The trial judge obviously adopted the same view, and on review, in the light of the record, we do, too.

The nineteenth ground of the motion assigns error on the part of the court "in regarding an instruction to the jury after their deliberations had commenced, and during the course thereof, which instruction was not marked and given over the objection and exception of the defendant * * *," etc. The subject-matter of the instruction is in no wise disclosed by the assignment of the motion, nor, if it was in fact given, by the transcript on appeal. Grounds of a motion for new trial do not prove themselves, and in this situation there is nothing presented for review in the connection just noted.

Finally, it is urged that collectively each and all of the matters assigned as error were so prejudicial to defendant as to deprive him of a fair and impartial trial and due process of law. The view hereinabove expressed whereby such matters were determined to be either not erroneous, or, at most, harmless error, renders the instant assignment untenable, and unnecessary to be further discussed.

We have examined those portions of the record whereon judgment is required to be rendered whether error is assigned or not, and find the same sufficient. The judgment is, accordingly, affirmed.

All concur.