STATE of Missouri, Respondent,

v.

Gerald H. COOK, Appellant.

No. 52291.

Supreme Court of Missouri,
Division No. 1.

March 13, 1967.

Robert J. O'Hanlon, St. Louis, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, W. Scott Pollard, Sp. Asst. Atty. Gen., St. Louis, for respondent.

HENLEY, Judge.

Gerald H. Cook, the defendant, Frank P. Downey and Ronald L. Brower were charged by information substituted for an indictment with prior felony convictions and with having on June 13, 1965 forcibly raped Jenny Savisky, a female over the age

of sixteen years. Section 559.260, RSMo 1959, V.A.M.S. Defendant, tried separately from his co-defendants, was convicted by a jury; the court assessed his punishment and sentenced him to imprisonment for fifteen years. Sections 556.280 and 559.260, RSMo 1959, V.A.M.S. Defendant appeals. He was represented at the trial and in this court by counsel of his own choice.

The sufficiency of the evidence to sustain the conviction is not questioned. Defendant relies for reversal on three points that the court erred in the exclusion of evidence.

On Sunday evening, June 13, 1965, at about 9 o'clock, Jenny Savisky, age 22, Ann Savisky, age 20, and their sister, Patricia Lanham, age 13, left their home to walk to Banjo and Nick's, a neighborhood drive-in restaurant at the corner of Jefferson and St. Louis Streets, in the City of St. Louis, to get a soda. Jenny is totally blind; Ann is blind in one eye and partially blind in the other. While waiting in line at a drive-in window for their sodas they were engaged in conversation by four young men, the three named in the information and one Lester Greer. The three girls left the line without getting their sodas and walked to the corner of Jefferson and University, about a block away, where they lingered to talk. In a few minutes the four young men drove up in Downey's automobile, stopped, got out, and resumed the conversation. Ann joined Lester Greer in the automobile while Jenny, defendant and Frank Downey sat on the steps of a building adjoining the sidewalk, Patricia walked across the street to the home of some friends. She (Patricia) later saw defendant and Ronald Brower forcibly walking her sister, Jenny, to and in an alley, about a half-block away; she became alarmed, ran home, and told her mother what she had seen.

Jenny Savisky testified that she was forced through a small opening into a "shed" or garage building adjoining the alley and there forcibly ravished by three

of the young men; first, by Brower; next, by defendant, who held her arm behind her and threatened to break it; and next by Downey. About the time Downey finished with her, she heard her mother and sisters calling for her in the alley. Downey hid in the garage as she groped her way out of the building through the small opening by which she had entered, and into the alley.

Josephine Lanham, mother of Jenny, testified that when she and another daughter arrived at a parking lot near this alley she saw defendant and Brower leaving the alley walking across the parking lot; that she walked into the alley calling out, "Jenny! Jenny!"; that she found Jenny standing by a doorway "crying" and "hysterical," with her clothing in a "sorry" state. She further testified that the police were called immediately, informed of what had happened, and given a description of the four young men and Downey's automobile; that she and her daughters waited on a nearby corner for arrival of the police; that the police took them to their home, where Jenny's soiled clothing was removed and given to the police. From there the police took her and Jenny first to the hospital and later to the police station where she found her daughter, Ann, and Brower, Downey and the defendant.

Defendant testified that he was with Brower, Greer and Downey in the latter's automobile at Banjo and Nick's on the evening in question and later was with these three young men and the three girls at the corner of Jefferson and University Streets. He further testified that he was sitting in Downey's automobile with Ann Savisky and Lester Greer when he saw Jenny and Brower walk across the street arm in arm into an alley. He said he later saw Frank Downey follow them into the alley; that he and Greer got out of the automobile and walked to the alley, but did not enter it; that he then heard a woman calling, "Jenny," and he and Greer returned to the automobile. He denied that he was in the "shed" with Jenny that evening and, of course, denied having sexual relations with her.

■ Defendant's first point is that the court erred in denying his offer to prove by cross-examination of Jenny Savisky that " * * * the sister Pat made a complaint about being raped just some days or perhaps weeks before this event, and that the mother had a long discussion with the girls." Defendant stated to the court that his reason for this offer of proof was " * * * that the question of consent is an issue, and it would show a motive for this witness to claim rape when she was caught by her mother." From the reason stated for the offer we infer that defendant meant to imply that this evidence would show that Jenny had consented to his act of sexual intercourse with her. However, his testimony was that he did not have intercourse with her; not that he did have, with her consent. We understand from his argument of this point that he now contends that by denying this offer of proof the court excluded evidence that would show an improper motive of prosecutrix in making the charge of rape, a motive that would adversely affect her credibility. That is, as we understand his point, he contends the offered evidence would have shown, or from it the jury properly could have drawn the inference, that as a result of the mother's " * * * long discussion with the girls," this twenty-two year old prosecutrix was in such fear of her mother's reprisals, or in such state of mind, she concocted or fabricated the charge of rape.

An accused " * * * may introduce any competent evidence, direct or circumstantial, to show that the charge against him was concocted by the prosecutrix * * *," and "Facts or circumstances which tend to show the motive * * * of the prosecutrix in making the charge, or which tend to affect her credibility, are admissible; but * * * Immaterial or irrelevant evidence is inadmissible to prove motive * * *." 75 C.J.S. Rape § 47, pp. 520–521.

We note that defendant's offer was that at some time after a complaint by Patricia that she had been raped, the mother had a discussion with the girls. Certainly, a complaint by Patricia that she had been raped on a prior unknown date would not be relevant to the issues. Counsel's statement that as a result of that complaint "the mother had a long discussion with the girls," without informing the court what facts he proposed to show by the witness (other than the fact that a "discussion" was had) from which the jury reasonably might infer improper motive affecting her credibility, would not, of course, permit the trial court to determine whether those undisclosed facts would be relevant to the issues. Consequently, the denial of this offer of proof cannot be reviewed. State v. Kozlickie, 241 Mo. 301, 145 S.W. 97, 98 [2]. The bare ·fact that the mother and daughters had a discussion of the youngest daughter's complaint of rape would not be relevant to any issue in this case.

 Defendant's next numbered point is that the court erred in sustaining an objection of the state to certain cross-examination of Patricia Lanham. We quote that part of the examination of this witness leading up to and including the question to which an objection was sustained.

"Q. Tell the Court and jury, will you, Pat, what Lester Greer and Ann did on the corner of University and Jefferson at that time?

"A. Kissing.

"Q. Embracing? Embracing?

"A. I don't remember.

"Q. Were they kissing on the cheeks or on the head or on the neck or on the lips?

"MR. FREDERICKS: Object to this; this is immaterial.

"THE COURT: I think it is immaterial and I sustain the objection."

· The court sustained the objection, stating that what prosecutrix' sister and defendant's friend did before the alleged rape in the presence of prosecutrix who could not see them was not a part of the res gestae and was immaterial.

As a part of this point defendant also contends that the court erred in sustaining the state's objection to this question asked the witness Ann Savisky: "Did he [Lester Greer] hug and kiss you?" Defendant offered to prove by Ann Savisky "that she maintains that Lester Greer hugged and kissed her, * * * that they * * * were affectionate towards each other [in Downey's automobile parked on the street] all the time her sister was down the alley with * * * Ronald Brower." Defendant contends this occurrence was a part of the res gestae and affected the credibility of the witness. The court sustained the objection and denied the offer of proof for the same reasons given for excluding essentially the same evidence sought from Patricia Lanham.

Evidence of this occurrence is not material to any issue in the case and did not go to the credibility of the witness, Ann; moreover, the information sought by the two questions to which objections were sustained was supplied in other portions of the testimony of both Patricia and Ann, and any possible error was thereby cured. State v. Wells, Mo., 305 S.W.2d 457, 458 [5]; State v. Hadley, Mo., 249 S.W.2d 857, 861 [3].

 Defendant's last point is that the court erred in refusing to permit him to prove that Ann Savisky and Lester Greer, while in Downey's automobile parked on the street, were struggling or scuffling over the possession of a piece of wire. His reason for this offer of proof was: "This all goes to her credibility." He seems to say in his brief that his purpose was to impeach the witness by use of a prior inconsistent statement; however, there is no indication of that purpose in his offer of proof. The occurrence referred to is a purely collateral

matter wholly unrelated to any issue in the case. The limitation of cross-examination in this instance was within the discretion of the trial judge. State v. Rose, Mo., 249 S.W.2d 324, 329 [3, 4]; State v. Daniels, Mo., 347 S.W.2d 874, 877 [4]. No abuse of discretion appears, and the point is over-ruled.

An examination of the record as required by Criminal Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All concur.