**STATE of Iowa, Appellee,**

v.

**Daniel James MORELOCK and Gary Morelock, Appellants.**

**No. 53290.**

Supreme Court of Iowa.

Feb. 11, 1969.

Don J. Wilson, Des Moines, for appellants.

Richard C. Turner, Atty. Gen., David A. Elderkin, Asst. Atty. Gen., and Ray A. Fenton, Polk County Atty., for appellee.

LeGRAND, Justice.

Defendants were charged with an attempt to break and enter Bright's Drug Store in Des Moines, Iowa, with intent to commit larceny in violation of section 708.-10, Code of Iowa, 1966. By agreement they were tried together. A jury verdict of guilty was returned against each defendant. They appeal from judgment on that verdict. We affirm.

The offense occurred on May 24, 1968, under unusual circumstances. Defendants, who are brothers, attempted to break and enter the store in daylight while a number of people, both in cars and afoot, had an opportunity to witness their efforts. William F. Bruce, later an important witness for the State, lived in an apartment across the street from the store and for several minutes watched the two men as they repeatedly backed up, ran eight or ten feet, and rammed into the side door of the drug store. He also saw them "pry lumber off the door and throw it away."

He considered this so strange that he called the police, who arrived while defendants were still at the scene. As the police car approached, defendants left and walked south on 28th Street toward Grand Avenue. Their arrest followed immediately. Although Mr. Bruce was unable to identify defendants, he testified the two men the officers took into custody were the same persons whose activities had caused him to call the police several minutes earlier.

When arrested defendants had in their possession gloves, a flashlight, and a screwdriver. Examination of the area around Bright's Drug Store also revealed the presence of a small crowbar. There was testimony that the molding around the drug store door had been partially removed, and bits of the molding were found discarded in the weeds nearby. There were also marks in and around the molding into which the screwdriver and crowbar fitted.

Allan B. Briskin, owner of Bright's Drug Store, testified he had closed and locked his store at approximately 6 P.M., about an hour before the attempted break-in. At that time the door was in good condition and the molding was not damaged in any way. When called by the police approximately an hour and a half later, he found the molding partially removed, the door marred and damaged, and the Yale lock sprung. At that time the door was held only by a hasp and bar arrangement used as extra security in addition to the standard Yale lock.

Defendants assign five errors, but they raise only two issues. The first four assignments deal, in one way or another, with the question of intent. Defendants claim they were entitled to a directed verdict because the State failed to prove the intent with which the attempt to break and enter was made. They claim also the instruction on intent was erroneous; that the instruction defining the crime charged did not include the issue of intent; and that the forms of verdict were prejudicially defective because they permitted the jury to return a guilty verdict without first finding the alleged attempt had been with intent to commit larceny.

The remaining error is based on the failure of the trial court to declare a mistrial, or to require the jury to retire for further deliberation, when a poll of the jurors indicated some uncertainty about the verdict. This matter is discussed in Division II.

I. We discuss the first four assignments of error together.

Section 708.10, Code of Iowa, 1966, provides in part as follows:

"If any person, with intent to commit any public offense, shall attempt to break

and enter * * * any * * * store * * * or any building in which any goods, merchandise, or valuable things are kept for use, sale, or deposit, he shall be imprisoned in the penitentiary not more than five years * * *"

■ The gravamen of the offense is the intent with which the attempt is made. Here the information charged defendants intended to commit the crime of larceny at the time of their attempt to break and enter Bright's Drug Store. The State must establish such intent beyond a reasonable doubt as one of the elements of the crime. Defendants insist they were entitled to a directed verdict because there was a total failure of evidence upon which to submit this issue to the jury. We do not agree.

■ Intent is seldom susceptible of direct proof, and necessarily it may be shown by circumstantial evidence. We have already detailed enough of the evidence to show the jury could find defendants were attempting to gain entry illegally into a closed business establishment; that the attempt was carried on with some degree of force and by the use of several tools; that they had severely damaged the door and molding, had sprung the lock, and had almost effected entrance when the arrival of the police curtailed their activities.

■ We have recently considered similar situations in several cases. In each case we held an intent to steal may be inferred from the actual breaking and entering of a building which contains things of value or from an attempt to do so. State v. Allnutt, Iowa, 156 N.W.2d 266, 271; State v. Fox, Iowa, 159 N.W.2d 492, 494; State v. McClelland, Iowa, 164 N.W.2d 189, filed January 14, 1969. We hold there was ample evidence here to submit this question to the jury.

Defendants contend, however, that even if the evidence is sufficient to make a jury question, the instructions are fatally defective because the instruction defining the crime charged omits any reference to in-

tent and the instruction on intent which was given later is prejudicially erroneous. We find no merit in this claim.

■ We start with the principle that instructions must be viewed together and not separated into parts or treated piecemeal. State v. Hardesty, 261 Iowa 382, 153 N.W. 2d 464, 471, and citations; State v. McClelland, supra.

■ A review of the instructions given by the trial court leads to the conclusion they adequately covered the matter of intent. In the statement of issues, the court informed the jury that defendants were charged with an attempt to break and enter with intent to commit larceny.

Instruction 3, to which objection was made for failure to specify the necessity to prove intent to commit larceny, defined the crime charged as follows:

"You are instructed that it is provided by Section 708.10 of the 1966 Code of Iowa that if any person, with intent to commit any public offense, shall attempt to break and enter any building in which money, goods or valuable things are kept for use, sale or deposit, he shall be punished as in said statute provided.

"'Larceny' is the unlawful taking and carrying away of money, goods or chattels of another, of any value, with the felonious intent to steal the same and deprive the owner permanently thereof.

* * *"

Although the first paragraph of this instruction refers only to "any public offense," it was immediately followed by a definition of larceny. Then Instruction 4 listed the propositions which the State was required to prove beyond a reasonable doubt before defendants could be found guilty. One of these was the following:

"That such attempt to break and enter on the part of the defendants was with the intent to commit a public offense, to wit: larceny."

In Instruction 5 the trial court instructed the jury concerning the manner in which intent may be proved.

When the instructions are considered together and read as a whole, there is little possibility the jury could have been misled concerning what the State was obliged to prove. The ultimate test of instructions is whether they clearly set out for the jury the issues to be determined or whether the jury is likely to be confused or misled.

Reference to "any public offense" after which larceny was immediately defined clearly pointed out that here the public offense *was* larceny. Furthermore any possible doubt, however remote, was removed by Instruction 4 expressly informing the jury of this.

We hold there was no reversible error in the instructions.

Defendant also complains because the forms of verdict did not include a specific reference to the intent with which the attempt to break and enter was made. Separate jury forms were submitted for each defendant. In each case one form was as follows:

"We, the jury, find the defendant * * guilty of attempting to break and enter, as charged in the information."

We know of no requirement that the verdict include the wording of the information or the elements of the crime. The information charged defendant with attempting to break and enter Bright's Drug Store with intent to commit larceny. Under the above form of verdict the jury found the defendant guilty "as charged in the information." This was a finding that defendant was guilty of attempting to break and enter with intent to commit larceny. It is unnecessary that such wording be specifically set out in the verdict.

II. Defendants last assignment of error deals with the polling of the jury after their verdict was returned. The poll was requested by defendants' counsel. The complaint concerns the answers of one juror, Dorothy Sinclair.

The jury poll was not reported and the matter comes to us by bill of exceptions under section 786.5, Code of Iowa.

Section 785.15, Code of Iowa, provides, "When a verdict is rendered, and before it is recorded, the jury may be polled on the requirement of either party; in which case each member thereof shall be asked whether it is his verdict, and if anyone answers in the negative the jury must be sent out for further deliberation."

The purpose of polling the jury is to determine that the verdict returned is actually the verdict of each individual member. 21 Am.Jur.2d, Criminal Law, section 371, page 395; 23A C.J.S. Criminal Law § 1392a, page 1047.

There is a lack of unanimity among the courts as to what uncertainty or reluctance on the part of a juror will vitiate his agreement in the verdict rendered. It is recognized all jurors do not embrace a verdict with the same degree of enthusiasm. Some reach their decision reluctantly after considerable discussion and persuasion, but if they voluntarily agree in the result, without being coerced to do so, this uncertainty does not affect the validity of the verdict reached.

In the case now before us the bill of exceptions shows some disagreement as to what actually happened when Dorothy Sinclair was polled. Defendants' counsel states she hesitated and stated she did not know "whether there was any intent." He also says she answered the verdict was hers "reluctantly."

The court's recollection is that the juror twice affirmed the verdict as being hers. She did so first when the court directed a general question to the jury asking if the verdict as read was the verdict of each of them individually. At that time Mrs. Sinclair signified it was by raising her right

hand along with all other jurors. Later, in response to a specific question from the court, the juror stated she had voted "yes" on the final ballot.

The county attorney recalls Mrs. Sinclair stated, in response to a question from the court, that this was her verdict and that she had voted this way on the final ballot.

Our task is not made easier by the fact that defense counsel, the county attorney, and the court differ in their versions of what happened at the time the jury was polled. It would be better if there were a court reporter's verbatim account of the disputed events.

However, we must decide the matter on the present state of the record, and we find no error there. In 23A C.J.S. Criminal Law § 1392d, at page 1053, appears this statement.

"* * * Although a juror at first answers evasively or in the negative, if he finally acquiesces in the verdict, it must be sustained." State v. Fields, Ohio App., 176 N.E.2d 845, 848; Whitney v. State, Fla., 132 So.2d 599, 602; State v. Brown, 110 Ohio App. 57, 168 N.E.2d 419, 422; State v. Daniels, Mo., 347 S.W.2d 874, 87 A.L.R.2d 1208; State v. Schmelz, 17 N.J. 227, 111 A.2d 50, 54. But see Solar v. United States, D.C.Mun.App., 86 A.2d 538.

On the particular facts in State v. Brown, supra, it was found no verdict had been agreed upon, but the principles announced there support the result we have reached.

In State v. Schmelz, supra, the court said, "If it clearly appears that the juror concurs in the verdict, any evasive statement or explanation * * * is to be disregarded."

Under the record here we find no such disagreement with the verdict, nor denial thereof, as would render it invalid. We agree with the trial court that Mrs. Sinclair's ultimate decision was for conviction. We find the verdict was properly received and recorded.

We have considered defendants' motion to strike the State's brief and argument for late filing. Defendant was offered additional time to reply thereto, which he waived. Under the circumstances we deny the motion.

Finding no reversible error in any of the matters raised by defendants, the cause is affirmed.

Affirmed.

All Justices concur.