# IN THE COURT OF APPEALS OF IOWA

No. 23-1964
Filed May 21, 2025

**JERRIS DAQUON DAVIS Sr.,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Black Hawk County, Alan Heavens,

Judge.

An applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Shea M. Chapin of The Chapin Center, PLC, Dubuque, for appellant.

Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney

General, for appellee State.

Considered without oral argument by Schumacher, P.J., and Badding and

Chicchelly, JJ.

**BADDING, Judge.**

Jerris Davis Sr. was charged with domestic abuse assault causing bodily injury, third or subsequent offense, after his girlfriend called the police and reported that he had assaulted her. A mutual friend who was at the couple's home witnessed the assault. She testified at the criminal jury trial that Davis twisted his girlfriend's arm behind her back, shoved her outside, and put her in a chokehold on the front steps. Although Davis's girlfriend described the assault in the same way to the police, she recanted those statements at trial, testifying: "I called the police and said he twisted my arm, he did this, he did that. He did not." The jury found Davis guilty of the lesser-included offense of domestic abuse assault, and he stipulated to the enhancing prior offenses.

After his direct appeal was dismissed, Davis applied for postconviction relief. Among other claims, Davis alleged that (1) trial counsel was ineffective for failing to move for a mistrial and to poll the jury because of a heated argument between two jurors during deliberations; and (2) appellate counsel was ineffective for failing "to raise issues other than ineffective assistance of counsel." Following a hearing on his application, the district court denied Davis's claims. Davis appeals, reprising those same claims.

We review postconviction-relief proceedings raising constitutional claims of ineffective assistance of counsel de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). To establish his ineffective-assistance claims for both trial and appellate counsel, Davis was required to prove (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001) (judging

ineffective assistance of appellate counsel claims "against the same two-pronged test utilized for ineffective assistance of trial counsel claims"). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (citation omitted).

*I.      Ineffective Assistance of Trial Counsel*

After the jury deliberated for about an hour, they sent a question to the court: "What happens if we cannot come to a unanimous decision? How long do we wait?" The parties agreed that the court should respond by directing the jury to continue their deliberations and by referring them to the following jury instruction:

> In order to return a verdict, each juror must agree to it. Your verdict must be unanimous.
> It is your duty as jurors to consult with one another and reach an agreement, if you can do so without compromising your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with the other jurors.
> During the deliberations, do not hesitate to re-examine your view and change your opinion if convinced it is wrong. But do not change your opinion as to the weight or effect of the evidence just because it is the opinion of the other jurors, or for the mere purpose of returning a verdict.

Several hours later, the trial judge overheard an argument between two jurors. As he informed the parties on the record:

> I will let you both know, as I was entering into this courtroom through the judge's hallway rounding the corner here behind me, so the length of the courtroom—of this courtroom to go yet before we reach the next courtroom where the jury is currently deliberating, there was a heated exchange to the point I was concerned someone was going to get physical. It was clear by a female's voice that she was scared. She was asking for a break. She was pleading for a break. Let's take a break, let's take a break, she said at least three or four times while a male voice became more and more loud and more and more aggressive.

I immediately grabbed my court attendant and told her to intervene and insist upon a break, separate them, get them outside, fresh air. That was probably hour and a half ago to an hour ago. After they took a break, they did apparently go back to work and then we ended up with question number 2 here.

That second question asked, "We are split (10 yes to 2 no) on #1 of instruction 17. This is not going to change. What do we do now???"[1] The court proposed releasing the jury for the day with a verdict-urging instruction, also known as an *Allen* charge.[2] The court's instruction ended with the charge: "Please go home and return tomorrow in the spirit of deliberation, fairness, and candor, and try to arrive at a verdict." The next day, after about an hour of deliberating, the jury returned a verdict of guilty for the lesser-included offense of domestic abuse assault. Defense counsel chose not to poll the jury.

Davis argues on appeal that trial counsel provided ineffective assistance for failing "to move for a mistrial in light of aggressive behavior by a male juror against a female juror" and "to have the jury polled."[3] Trouble is, trial counsel testified at the postconviction-relief hearing that Davis did not want him to move for a mistrial:

---

[1] Instruction 17 was the marshaling instruction for the offense. Paragraph 1 of that instruction required the State to prove:

> On or about the 1st day of February, 2021, the defendant did an act which was intended to cause pain or injury, result in physical contact which was insulting or offensive to [the victim], or was intended to place [the victim] in fear of immediate physical contact which would have been painful, injurious, insulting or offensive to [the victim].

[2] "An '*Allen* charge' is a common name for a verdict-urging instruction" from *Allen v. United States*, 164 U.S. 492, 500–02. *State v. Davis*, 975 N.W.2d 1, 17 n.10 (Iowa 2022). Davis does not challenge the verdict-urging instruction given here.

[3] Davis also argues that trial counsel "failed to voir dire the jurors after their heated argument to determine if the incident influenced the female juror requesting the break" or otherwise unduly influenced the jury. And he suggests that trial counsel should have secured his presence when the court was addressing questions from the jury. But these issues were neither raised in nor decided by the district court.

>I discussed that with Mr. Davis. He did not want me—he specifically advised me not to request a mistrial because, of course, the remedy for a mistrial isn't that the case goes away. It's that the case has to be retried again at a later date.
>
>And as we already know, he wanted a speedy trial. He wanted a resolution to his case, and so he indicated to me he did not want me to ask for a mistrial. He wanted to go ahead. I assume . . . he felt that the fact that there was no agreement might ultimately result in a not guilty verdict. And I think that's a rational conclusion to make.

In denying Davis's application for postconviction relief, the district court found that trial counsel "was an extraordinarily credible witness." "Even on de novo review, we defer to the postconviction court's credibility finding." *Smith v. State*, 7 N.W.3d 723, 732 (Iowa 2024). Upon doing so, we find that counsel was following Davis's directive by not moving for a mistrial. And generally, a defendant "will not be permitted to allege an error in which he himself acquiesced, or which was committed or invited by him, or was the natural consequence of his own actions." *State v. Sage*, 162 N.W.2d 502, 504 (Iowa 1986) (cleaned up); *see also Moyer v. State*, No. 06-1454, 2007 WL 2963982, at *5 (Iowa Ct. App. Oct. 12, 2007) (finding counsel's performance was not deficient when defendant approved of replacing a juror rather than seeking a mistrial). Because counsel was following Davis's instruction to refrain from seeking a mistrial, which was a rational roll-the-dice strategy, we find no breach of duty on the mistrial issue. *See, e.g.*, *Belken v. State*, No. 05-0326, 2006 WL 1278730, at *5–6 (Iowa Ct. App. May 10, 2006) (finding

---

So they are not preserved for appellate review. *See Ruiz v. State*, 18 N.W.3d 453, 457 (Iowa 2025) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)).

attorney's failure to move for a mistrial based on suspected juror misconduct "was trial strategy and not ineffective assistance").

We also reject Davis's claim about trial counsel's decision not to poll the jury. Counsel testified that decision was a judgment call based on more than thirty years of experience in criminal defense: "I just had never had anything come from it, knew that it made some jurors uncomfortable, so I stopped doing it." Davis does not cite any authority suggesting that a failure to poll a jury is a per se breach of essential duty. *See* Iowa R. App. P. 6.903(2)(a)(8)(3). And "[m]iscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Ledezma*, 626 N.W.2d at 143.

In any event, assuming that counsel performed deficiently by not polling the jury, the remedy when a juror "expresses disagreement on such poll or inquiry" is further deliberation. Iowa R. Crim. P. 2.22(5) (2021). Davis made no effort to demonstrate that further deliberation would have resulted in a different outcome. *See Ledezma*, 626 N.W.2d at 143. He relies on the "heated exchange" overheard by the trial judge and the jury's disclosure of their division the day before the guilty verdict was returned in suggesting there was undue influence. But our supreme court has recognized that "all jurors do not embrace a verdict with the same degree of enthusiasm," with some "reach[ing] their decision reluctantly after considerable discussion and persuasion." *State v. Morelock*, 164 N.W.2d 819, 823 (Iowa 1969). We accordingly conclude that Davis did not meet his burden to prove this ground of ineffective assistance.

## II.    Ineffective Assistance of Appellate Counsel

On direct appeal from his conviction, the only claim raised by Davis's appellate attorney was that trial counsel was ineffective for failing to seek a mistrial. The State moved to dismiss the appeal under Iowa Code section 814.7 (2021), which prohibits such claims from being "decided on direct appeal from the criminal proceedings." Although appellate counsel at first responded by requesting more time to file an amended brief, he later filed a voluntary dismissal of the appeal. Davis challenged that decision on postconviction relief, arguing that appellate counsel should have raised "issues such as insufficiency of the evidence and juror misconduct."

At the hearing on Davis's postconviction-relief application, appellate counsel testified that he considered but rejected raising those issues on direct appeal. Counsel explained that a challenge to the sufficiency of the evidence was unlikely to succeed because "there was an independent witness that observed the domestic assault." And he felt the juror misconduct issue was better resolved through an ineffective-assistance claim because "there really wasn't enough on the record." Indeed, that issue had to wait for postconviction-relief because it was not preserved. *See State v. Wells*, 629 N.W.2d 346, 356 (Iowa 2001) (finding a claim of juror misconduct was not preserved when the defendant "waited for a verdict, and when it was unfavorable, he then complained"). Counsel testified that he discussed these issues with Davis and advised him that "he was better off not waiting" months for the direct appeal to be resolved when he could immediately proceed to postconviction relief.

This is not a case where counsel abdicated rather than exercised professional judgment, as Davis seems to suggest with the structural-error argument that he raises for the first time on appeal.[4] *See Lado v. State*, 804 N.W.2d 248, 251 (Iowa 2011) ("Clearly, there is a greater tendency for courts to find ineffective assistance when there has been an abdication—not exercise—of professional responsibility." (cleaned up)). "Selecting assignments to assert as grounds for reversal is a professional judgment call we are reluctant to second-guess." *Osborn v. State*, 573 N.W.2d 917, 922 (Iowa 1998); *see also McGee v. State*, No. 22-1993, 2024 WL 4760534, at *3 (Iowa Ct. App. Nov. 13, 2024) ("We give significant deference to appellate counsel's choice of issues on appeal."). Davis has made no argument that either of these issues would have been successful on appeal. *See Stonerook v. State*, No. 09-696, 2010 WL 786045, at *4 (Iowa Ct. App. Mar. 10, 2010) (finding an appellate attorney "was not ineffective in failing to raise meritless issues on direct appeal"). And we agree with the district court that counsel's "opinion about a postconviction case being a better path to a new trial than a direct appeal was reasonable." We accordingly find that Davis failed to prove appellate counsel performed deficiently.

**AFFIRMED.**

---

[4] Although we need not reach Davis's structural-error or prejudice arguments because we are resolving the claim on the duty prong, we observe the newly-raised structural error argument was not preserved for our review in any event. *See Riddle v. State*, No. 20-0536, 2021 WL 2708937, at *2 (Iowa Ct. App. June 30, 2021) (finding an applicant's structural error claim was not preserved for review where it was never raised before appeal).