THE STATE v. D. F. WALSER, SR., Appellant.—1 S. W. (2d) 147.

Division Two, December 31, 1927.

*Munger, Munger & Farris, Smith & Zimmerman* and *Ward & Reeves* for appellant.

838

*North T. Gentry,* Attorney-General, and *Smith B. Atwood,* Assistant Attorney-General, for respondent.

DAVIS, C.—Defendant was indicted by the grand jury of Stoddard County on the charge of receiving, on December 19, 1923, more than thirty dollars on deposit in the Bank of Puxico, knowing it to be insolvent and in a failing condition. The indictment comprised two counts, the first of which was dismissed, defendant being put to trial on the second count. On motion the venue was changed to Dunklin County, two trials being had, the first resulting in a hung jury and the second in the conviction of the defendant, and a sentence of two years in the penitentiary, from which an appeal was perfected.

Inasmuch as defendant does not challenge the want of evidence to support the judgment, it is unnecessary to detail the evidence. It is sufficient to say that the evidence in behalf of the prosecution warrants the finding that the Bank of Puxico closed its doors on Monday, December 24, 1923. For more than three years previous defendant had been president of the bank, succeeding to the office after years of service as cashier. On December 19, 1923, Dr. Page, a customer, deposited in the bank, defendant personally taking the deposit, a check drawn in his favor on the Bank of Puxico for $295.85. On Saturday, December 22, 1923, representatives of St. Louis banks met at the home of defendant, who was ill, and tentatively agreed to loan the Bank of Puxico $30,000, advancing $12,000 and taking collateral notes of the face value of about $74,000 as security. Upon information to the St. Louis banks that the Bank of Puxico needed more than $30,000 to tide it over, the St. Louis banks refused further aid, resulting that the Bank of Puxico closed its doors on the following Monday. The bank was capitalized for $25,000. The evidence for the State was of sufficient import to permit the jury to find that at the time Dr. Page made the deposit in the Bank of Puxico the defendant knew the bank was insolvent and in failing circumstances. Further facts relating to the issues discussed will be appropriately noted.

The cause was tried and motion for new trial filed before Section 4079, as amended, Laws 1925, page 198, became effective. Hence we are relegated to the applicable procedure as heretofore obtaining.

I. (a) Over the objection and exception of defendant the court permitted a witness for the State, a director of the bank, to testify that the bank went broke because it was insolvent. While the proof for the State tended to show that certain notes were of little or no value,

the proof for the defense tended to show that the same notes were of sufficient value at the time of the failure of the bank to be collected in full. As the facts were controverted, the issue of insolvency of the bank was a jury question. To permit the witness to testify that the bank was insolvent was a conclusion and an invasion of the province of the jury as arbiter of the facts. While in some instances, conclusions for want of adequate power of expression have been held non-prejudicial, yet where the witness can clearly and correctly give the facts upon which a conclusion may be based, then it was for the jury to draw the conclusion. [State v. Davis, 225 S. W. 707.] In this instance the facts as to the insolvency of the bank were within the knowledge of the witness and could be clearly expressed. If they were not within his knowledge, the conclusion was mere speculation. In this instance the testimony in our opinion was prejudicial.

(b) The facts show that the bank closed temporarily on December 22, 1923, but again opened for business on that day upon the tentative agreement of the St. Louis banks to loan $30,000, actually advancing, however, $12,000. The same director was asked on cross-examination if a meeting of the board of directors was not held on Saturday, December 22, 1923, at which meeting all present agreed that the bank was solvent. This inquiry was proper. The character of the inquiry was very different from the opinion of the witness that the bank was insolvent. The inquiry was pertinent as tending to show the result of official action of the board of directors as to a matter then depending, that of the solvency of the bank. In the absence of evidence of fraud or concealment on defendant's part as to the solvency of the bank, the official action of the bank directors involved defendant's knowledge of the solvent condition of the bank on the occasion of receiving the deposit. We think this evidence was admissible and defendant was entitled to the benefit of it.

(c) Special Deputy Bank Commissioner Gloriod was permitted to testify to the value of the bank fixtures, and when asked about his experience said, "Well, necessarily not very much;" that he attended a sale at which the fixtures of a closed bank were sold. He further testified that he made a visit to Shelby County to ascertain the value of the farm in said county owned by the bank, spending two or three hours there at one time and a part of a day at another. In the matter of the bank fixtures, his knowledge as to values was limited to a prior single experience, which failed to qualify him as to value. The casual observation of land in a distant county and knowledge of values based on hearsay showed such want of experience and intimate knowledge of values as to render the evidence incompetent and valueless. While

non-expert witnesses may be competent to testify as to values, yet to render them competent they must qualify as to experience and knowledge from an intimate acquaintance with conditions and values in the community in which the property is situated. [State v. Sattley, 131 Mo. 464, 33 S. W. 41; State v. Sanford, 297 S. W. 73.] We think this testimony was prejudicial.

(d) Witnesses for the State were permitted to testify that they had not collected certain notes belonging to the bank. This testimony was erroneously admitted because there was no showing upon the part of the witnesses that they had made a sufficient effort to collect these notes. The evidence went no further than tending to show that some of the notes had been sent to an attorney for collection. The issue on which defendant was tried was the insolvency of the bank and defendant's knowledge of it at the time of the deposit. It was necessary for the State to develop probative evidence as to both these facts. The fact that notes were not collected does not tend to show that they could not be collected without showing as to the effort made to collect them. It was for the jury to say upon a development of the facts whether they were collectible or of no or little value. We think this evidence was prejudicial.

(e) One of the notes held by the Bank of Puxico was that of one Dooley, president of the Drovers' National Bank of East St. Louis. To show that the note was not collectible the State was permitted to develop that Dooley became a bankrupt in the summer of 1924, upon which the witness was permitted to state the contents of Dooley's bankruptcy schedule of property. The evidence shows that Dooley's note was secured by Drovers' National Bank stock. It results that the admission of this testimony was erroneous, both because it failed to consider the value of the collateral bank stock and because the bankruptcy schedules were the best evidence of what they contained. [State v. Salmon, 216 Mo. 466, 115 S. W. 1106.]

(f) Witness Krebs, representing the Federal Reserve Bank of St. Louis, was permitted to testify that checks drawn by persons on the Bank of Puxico which he presented for collection were not paid and that he protested same. The court failed to require the State to show that the parties who drew these checks had the money in the bank to cover same. There is at least an inference in the evidence that the checks were refused because of insufficient funds. Other checks presented by the witness the bank paid. Under these circumstances the State should have been required to show funds in the bank belonging to the drawers sufficient to pay the checks.

(g) The State was permitted to prove by witness Lufcy of what defendant's estate consisted at the time he went into bankruptcy in

June, 1924. In this regard the State should ·be required to develop first defendant's ;assets and means of satisfying his obligations to the bank at the time of the closing, tracing the disposition of his assets from the closing of the bank to the time of bankruptcy, in view of the inference from the State's evidence that defendant had turned property over to the bank after it was closed.

(h) The State was permitted to show by witness Cookson the market value of certain notes of customers owned by the bank to show insolvency. The witness stated that he did not know the market value of the notes, but was permitted to state what in his opinion the notes would realize. The State's evidence showed that some of this paper was secured by collateral, but the question as propounded did not incorporate the value of the security. We do not think that the witness was qualified to speak with respect to the value of the notes. The knowledge he had of the financial condition of the makers of the notes was indefinite and uncertain. Then again, in answering the questions he did not take into consideration the value of the securities behind the notes. Before being permitted to testify in that regard knowledge on the part. of the witness of the financial condition of the makers of the notes should be developed with such particularity that the jury may intelligently weigh the probative value of the testimony. We do not think the State sufficiently qualified the witness as to the financial condition of the makers of the notes. It was for the jury to say what value the notes had from a development of the property owned by the maker of the note.

II. Defendant charges error on the part of the court in giving Instruction 4. It is as follows:

"The court instructs the jury that the failure of the Bank of Puxico is prima-facie evidence that said bank was insolvent and in failing circumstances on the eighteenth day of December, 1923, and also prima-facie evidence that defendant, as its president, had knowledge at said date that said bank was insolvent and in failing circumstances. The court instructs the jury that prima-facie evidence is such that raises such a degree of probability in its value that it must prevail, unless it be rebutted or the contrary proved."

This instruction proceeds in its scope far beyond the instructions found in State v. Buck, 120 Mo. 479, 25 S. W. 573, and State v. Lively, 311 Mo. 414, 279 S. W. 76, which have been approved by this court. The instruction here criticised is not in harmony with Section 3365, Revised Statutes 1919, which section goes no further than providing that the failure of the bank shall be prima-facie evidence of knowledge

842

of the officer that the same was insolvent or in failing circumstances when the property or money was received on deposit. The instruction goes beyond the statute and informs the jury that failure of the Bank of Puxico is prima-facie evidence that said bank was insolvent and in failing circumstances on December 18, 1923. In this respect the instruction usurps the function of the jury, for it was necessary for the jury to find that the bank was insolvent at the time of the deposit before defendant could be adjudged guilty. It results that the giving of the instruction for the reason stated was error.

III. Defendant charges that Instruction 6 is erroneous. The instruction goes too far in that it shifts the burden to defendant to show the solvency of the bank, the circumstances attending the failure, or any fact tending to exonerate him from criminal liability. This instruction should, upon a retrial, be revamped to conform to the ruling in State v. Sanford, 297 S. W. l. c. 78-79.

IV. Defendant complains of the modification by the court of his Instruction 14. The instruction authorized the acquittal of defendant if the jury found from the evidence that defendant at the time he received said deposit "believed the said bank was solvent." Between the words "deposit" and "believed" the court added the words "in good faith honestly." It is evident that one cannot believe a thing without honestly and in good faith believing it. Belief embodies the idea of good faith and honesty, even though one is mistaken in his belief. The insertion of the words "in good faith honestly" in relation to the word "believed" was tautology, and so emphasized the word "believed" that we think the instruction intimated to the jury that, even thought defendant believed the bank to be solvent at the time he took the deposit, the court doubted the sincerity of his belief. We are unwilling to say in this case that the inserted words constituted prejudicial error, but they should be eliminated because they are surplusage and because they too prominently emphasize the word "believed."

V. The defendant offered an instruction which the court refused as offered, but gave an instruction (No. 8a) which in substance followed the instruction offered by defendant, except that it eliminated the latter portion thereof reading: "and you are further instructed that it is not enough that the evidence in the case goes to show his guilt, but such evidence must be entirely inconsistent with a reasonable supposition of his innocence. Suspicions, however strong, or probabilities, however great, will not be sufficient to justify a conviction, but the

evidence, to justify a conviction must be positive, convincing, establishing the defendant guilty of the charge contained in the indictment beyond a reasonable doubt, and unless the evidence so convinces you, a verdict of not guilty must be returned.'' The whole instruction as offered by defendant has the sanction and approval of this court and should have been given to the jury. [State v. Burlingame, 146 Mo. 207, 48 S. W. 72.]

VI. We have considered the remaining assignments of error, but think it unnecessary to comment thereon. It follows from what we have said that the judgment should be reversed and the cause remanded. It is so ordered. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.