STATE of Missouri, Respondent,

v.

Charles BERNS, Appellant.

No. 57572.

Supreme Court of Missouri,
Division No. 1.

Dec. 10, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Daniel V. O'Brien, St. Louis, for appellant.

LAURANCE M. HYDE, Special Commissioner.

Defendant was convicted of burglary second degree and stealing and was sentenced to five years' imprisonment for burglary and concurrently four years for stealing. Defendant has appealed and we have jurisdiction because his notice of appeal was filed here December 2, 1971. We affirm.

Four officers of the St. Louis County Police Department on March 14, 1969, went soon after midnight to the building of the Allegheny Ludlum Steel Corporation to watch, from its large front window, the 3M Company (Minnesota Mining and Manufacturing Company) warehouse north across Bauer Street which was between the two buildings. The 3M employees left at midnight. The officers were Detective-Lieutenant Jack Patty, Detective-Sergeant Richard Strehl, Sergeant Richard T. O'Connor, and Detective James L. Smith. They were joined by Chief of Detectives, Major Vasel, about 2:00 a.m. At 4:30 a.m. a dark green Cadillac stopped in front of the 3M building and a man got out. When the door of the Cadillac was opened for the man to get out the dome light of the car came on and both Detective Smith and Major Vasel looking through binoculars identified the driver as the defendant. The man who got out went along the east side of the 3M building and disappeared behind a parked van. He was identified as Adrian Meyer who was later arrested at the 3M warehouse. There was another man in the Cadillac who was not identified by them.

At 5:30 a.m. an Avis truck came from the east followed by the same dark green Cadillac the officers had seen earlier. The Avis truck went into the 3M lot, backed into the east side of the 3M building disappearing behind a parked van. In a minute or two the Cadillac which had gone west returned heading east. It stopped for a man to get in, who came from the east side of the 3M building, and then drove east.

Detective Smith and Sergeant O'Connor drove after the Cadillac and stopped it after it had gone about 1500 feet. Defendant who was driving it and another man, Ulysses Simpson Grant Thompson (now deceased), were arrested. When Detective Smith and Sergeant O'Connor left to pursue the Cadillac, the other three officers ran across the street to the 3M building. Detective Strehl ran to the north wall where he saw a man come out of a north wall door and run across the railroad track and into a brushy field beyond it. Strehl identified himself as a police officer, shouted for the man to stop. When the man kept running, Strehl fired once in the air and then three times at the man but he escaped. (It is defendant's theory that this man was a 3M employee and that he let Meyer into the building; and so defendant claimed there was no breaking in but only stealing. However, this theory was unsupported by substantial evidence at the trial.) The officers arrested Adrian Meyer near the Avis truck and he later entered a plea of guilty.

The officers found a broken window in the north (rear) side of the 3M building (by the railroad track). The hole was about "five inches by five inches" and there was a rock inside the building near it. The window could be unlocked and opened by reaching through this hole. This evidence was relied on as supporting the charge of burglary. The window was closed when the officers saw it.

There were eight docks for loading trucks on the east side of the 3M building. The 3M warehouse foreman said he locked the doors to these docks at midnight after the employees left. After the arrests, they all were found secured except the third door from the south. Its track "had been bent back so the rollers on the door could bypass the lock." A hammer was found on the floor to the left of this door. It "appeared to be the property of 3M," kept on its docks according to Mr. Mielke, 3M assistant branch manager. The police found three skids of 3M merchandise in the Avis

truck and three more on the dock by it. The merchandise included electric tape and heating panels. Mr. Mielke testified the value of this merchandise was $17,628.90.

■ The Avis truck rental agreement was signed "Grant Thompson." Defendant claims error in admitting the rental agreement of the Avis truck signed by Thompson and makes several contentions concerning it. His first contentions are that the agreement was produced and identified by a witness not endorsed on the information; and that no proper foundation was laid to qualify this agreement as an exception to the hearsay rule. The witness was Peter Hines, station manager of Avis, who was shown the rental agreement which contained the numbers of the truck found at the 3M Company building and said: "This is a rental agreement which we write up every time we rent a truck." He also described their method of renting trucks including the number of copies made, where they were kept and the records concerning rentals. He was called as a witness because the Avis agent who rented the truck was no longer with the company and was at the time of the trial on a tour with students in Mexico. The court limited the testimony of Hines to "the record to whom the truck was issued as shown by their records." There was no claim of prejudice or surprise and no motion to quash or for a continuance. See State v. Strawther, 476 S.W.2d 576 (Mo.1972); State v. Farris, 243 S.W.2d 983 (Mo.1951); State v. Derrington, 137 S.W.2d 468 (Mo.1940). We hold the court properly admitted the rental agreement under the Business Records Law, § 490.680, RSMo 1969, V.A.M.S. Defendant's reliance on Lockhart v. St. Louis Public Service Co., 318 S.W.2d 177 (Mo.1958), is not persuasive. Lockhart held there was a failure to prove as to the hospital records involved "the mode of its preparation" and that they were made "at or near the time of the act, condition or event" and therefore it was said that it was not shown to be a business entry. That is not true of the testimony of the witness Hines about the rental agreement

in this case. Furthermore Lockhart was overruled in Rossomanno v. Laclede Cab Co., 328 S.W.2d 677, 683 (Mo.banc 1959), apparently because of its stricter requirement as to such proof. We hold the court properly admitted the Avis rental agreement.

Defendant also claims the State was erroneously allowed to utilize the rental agreement to indicate that the man arrested in the Cadillac with defendant was the same man who rented the truck used in the burglary. Defendant says there was no physical identification of the man arrested in the Cadillac and that Officer Smith was allowed to testify over objection and without any foundation that the arrested passenger was "Ulysses Simpson Grant Thompson." However, Officer Smith said he turned over the two men he arrested to Major Vasel and Lieutenant Patty; and they were both charged as defendants in this case. Defendant also says the writing "Grant Thompson" in the space for the customer's name on the rental agreement was irrelevant and immaterial; and that it was error to instruct the jury that defendant was charged together with Ulysses Simpson Grant Thompson and to allow argument that Ulysses Grant Thompson was also charged. (The instructions submitted that defendant "acting together with another or others, did * * * break and enter into" the 3M building.)

■ These contentions were not raised in defendant's motion for new trial. The only ground therein concerning Thompson was No. 2, as follows: "That the court erred numerous times in letting the attorney for the State mention what the co-defendants did and said, one of the defendants being dead, one co-defendant having previously pleaded guilty." This does not raise any issue as to Officer Smith's testimony that the passenger in the Cadillac he arrested was Thompson. We, therefore, consider that no issue as to the identification of Thompson being the passenger he arrested in the Cadillac is before us for review. It appears here, as implied in the ground above quoted from defend-

ant's motion for new trial, that Grant Thompson was charged with him in this case and no evidence was offered by defendant to show that Thompson was not the person arrested with him. Furthermore, no objection was made when Mr. Hines read the customer's name "Grant Thompson" in reading the information stated in the rental agreement. It was properly part of the State's case to show what defendant and the other men with him did at the 3M building. The defendants were not tried together since Thompson died and Meyer pled guilty. As to defendant's claim that it was error to tell the jury that defendant was charged with Thompson, this was not raised in defendant's motion for new trial. Furthermore, see State v. Tettamble, 394 S.W.2d 375 (Mo.1965), and State v. Deppe, 286 S.W.2d 776 (Mo.1956). Defendant's claim, that the State was erroneously allowed to utilize the Avis rental agreement to indicate that the person arrested in the car with him was the same person who rented the truck used in the burglary, cannot be sustained.

■ Defendant claims the court committed "plain error" in permitting the prosecuting attorney in his closing argument to say: "Mr. O'Brien says this was a putup job of stealing. If it was a stealing, under our stealing statutes when it is not connected with a burglary, that goes up to ten years. If, at any time, we were of the opinion it was only a stealing deal, they would have been charged with stealing and not the offense of burglary in the second degree and stealing."

No objection was made at the trial to this statement and it was not mentioned in the motion for new trial. Defendant relies on Supreme Court Rule 27.20(c), V.A.M.R., authorizing consideration of plain errors not preserved for review affecting substantial rights "when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

Defendant's counsel had argued there was no burglary but an inside job, doors opened or left open by a 3M employee.

The prosecuting attorney's statement was not a direct statement of his personal opinion as to the guilt of defendant as was the statement of the prosecuting attorney in State v. Webb, 254 Mo. 414, 162 S.W. 622, 626 (Mo.1914). In State v. Dixon, 463 S. W.2d 783 (Mo.1971), the statement of the judge was held subject to be "construed by the jury as indicating a belief in the guilt of the accused"; and relief was granted under Rule 27.20(c). Defendant also cites State v. Hess, 240 Mo. 147, 144 S.W. 489 (1912); State v. Goodwin, 217 S.W. 264 (Mo.1919); State v. Thompson, 238 S.W. 115 (Mo.1922); State v. Cole, 252 S.W. 698 (Mo.1923); State v. Mathis, 323 Mo. 37, 18 S.W.2d 8 (1929); State v. Pope, 338 Mo. 919, 92 S.W.2d 904 (1936). These were all cases of expressed personal belief of a prosecuting attorney in a defendant's guilt and such a personal belief may be based on matters not before the jury. See State v. Rentschler, 444 S.W.2d 453, 457 (Mo.1969); State v. Moore, 428 S.W.2d 563, 565 (Mo.1968).

The prosecuting attorney's statement here was really a statement of the reason for the charge of both burglary and stealing in answer to defendant's argument that the evidence showed no more than stealing because of the claim of a 3M employee being involved. It is not as strong a statement as to guilt as that of a prosecuting attorney considered in State v. Clark, 412 S.W.2d 493 (Mo.1967), that he had filed the charge that he thought defendant was guilty of. In that case we said: "It is doubtful in context that the language is fairly open to the criticism that it was an expression of a personal opinion but if it possibly is subject to the appellant's interpretation the trial court has some discretion in considering its prejudicial effect * * * and upon this record there is no manifest error or demonstrable abuse of discretion." We hold that the statement of the prosecuting attorney in this case cannot reasonably be construed as a statement of his personal opinion as to the guilt of defendant to the charges made and that it is not a matter for application of Rule 27.-20(c).

Defendant's final claim is that the court erred in allowing 3M warehouse supervisor Mielke to testify that the value of the goods claimed to have been stolen was $17,628.90. Defendant says Mielke had no personal knowledge of this value and that the only basis for his testimony was a memorandum he prepared from the company's inventory records. Defendant says the inventory records were the best evidence of the values and should have been produced but that Mielke's testimony was hearsay. Defendant also says this evidence of value should not have been admitted because it was not an issue in a burglary charge, citing 52A C.J.S. Larceny § 118, p. 617. Two cases are cited in C.J.S. in support of its statement, namely State v. Kagi, 105 Kan. 536, 185 P. 62 (1919), and Watkins v. State, 21 Ala.App. 585, 111 So. 43 (1926), but in both convictions were affirmed. In Kagi, the defendant was not permitted to offer evidence of the value of the calf he was convicted of stealing. The court held there was no error because the statute under which he was convicted made larceny of "neat cattle" a felony without respect to the value of the animal stolen. In Watkins, defendant was charged with knowingly receiving a stolen horse of the value of $50.00, but was found guilty of receiving a horse of the value of $40.00. The court affirmed the conviction saying that under the statute for violation of which defendant was convicted the value of a horse stolen was immaterial. Likewise in automobile theft cases where value is immaterial, we have held admission of evidence of value could not be prejudicial to the defendant. State v. Carson, 286 S. W.2d 750 (Mo.1956); State v. Alberson, 325 S.W.2d 773, 776 (Mo.1959); State v. Daniels, 347 S.W.2d 874, 877 (Mo.1961).

As noted defendant relies on the best evidence rule saying Mielke had no personal knowledge or opinion as to the value of these goods and was not qualified as an expert citing State v. Hill, 329 Mo. 223, 44 S.W.2d 103 (1931), involving value of bank assets, and State v. Walser, 318 Mo. 833, 1 S.W.2d 147 (1928), involving land values, and 32A C.J.S. Evidence § 826, p.

169. See however 31A C.J.S. Evidence § 181, p. 459, saying "[v]alue, whether intrinsic or as regulated by the 'market,' is a quality so subtle and intangible, is a function of so many variables * * * that a relaxation of strict rules of evidence is necessary, and use must be made of such probative methods as are available." In this case, a computation of value of a great many items in many boxes was required, such as 48 cartons of electric tape, 100 rolls to the carton; 26 cartons of heating panels; 19 cartons of boxed electrical tape; and others that required computation from price lists.

Mielke's testimony as to value of the goods in the Avis truck and on the dock by it was "our inventory value * * * supplied by our company's accounting department in St. Paul." Mielke obtained these prices on which his testimony as to value was based from the records in their branch office after making an inventory of these numerous items. These office records were the only records available to him as to the value of this merchandise. Defendant contends that the inventory records in the branch office were the best evidence and should have been produced and that Mielke's testimony of what they showed was hearsay. Likewise in United States v. May, 419 F.2d 553, 555 (8th Cir. 1969), it was claimed "the trial court erred in admitting the testimony of the Remington Arms agent as to the value of the carton of shells" alleged to have been stolen in December 1968. "He based his testimony upon a company wholesale price list," which was issued in January 1968. Defendants claimed "the witness was not familiar with the list, did not know how the price list was made up and did not show that the list was current." The witness was a branch manager and testified the same prices were in effect in December 1968. The court said: "Under the circumstances, sufficient foundation was laid for the jury to consider the evidence of value." Our view is that Mielke's testimony presents a similar situation since his testimony on value was to state the values supplied by his company's accounting office to

this branch office in St. Louis when the goods were sent to them.

 Defendant further says the prosecuting attorney's use in his argument to the jury of the claimed improperly admitted evidence of value emphasized the value of the goods and that this affected the jury's verdict as to the punishment fixed in their verdict. However, no objection was made to the prosecuting attorney's statements concerning the value of the goods and no point was stated concerning it in defendant's motion for new trial.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.