Roy **MUNSON**, Appellant (Defendant),

v.

The **STATE** of **Wyoming,**
Appellee (Plaintiff).

No. 88–65.

Supreme Court of Wyoming.

March 17, 1989.

Leonard D. Munker, State Public Defender and Jacalyn L. Bachlet, WPDP, Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Senior Asst. Atty. Gen., Paul S. Rehurek, and Gerald P. Luckhaupt, Asst. Attys. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

A sufficiency of the evidence criminal appeal is presented by appellant's three count burglary conviction after the other two alleged participants plea-bargained their guilty plea sentences.

We affirm.

Roy Munson, as appellant, presents two issues on appeal and we will only substantively consider the first for reasons hereafter stated. They are: (1) sufficiency of the evidence for convictions, and (2) "[w]hether that portion of § 7–13–301, W.S.1977, which requires that the prosecutor consent before a judge may grant first-offender status under § 7–13–301 is an unconstitutional violation of the separation of powers doctrine embodied in Article 2, § 1 of the Wyoming Constitution."

Applied to a constitutional attack on sufficiency of the evidence to convict, *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1074–75, 25 L.Ed.2d 368, 377–78 (1970); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, reh'g denied 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), the jury as fact finders were entitled to have found the following evidence.

In the period of early November 1986, four cabins located in Guernsey State Park in eastern Wyoming had been burglarized and miscellaneous property taken from each. On December 22, 1986, Stuart Demerest called police officials to confess to the offenses by dealing for a plea bargain. He identified a friend, Morgan Perkins, as a second participant who also pleaded out and was sentenced. Lacking prior acquaintanceship, Demerest could not directly identify the third participant, except by the vehicle used and as "a friend of Perkins'." Perkins did identify appellant at his own sentencing, but at appellant's trial, denied identification. As related by the State in brief:

> The prosecuting attorney thereupon impeached Mr. Perkins' statements regarding lack of memory through two documents, state's exhibits 1 and 2. These documents apparently stem from Mr. Perkins' guilty plea to one or more of the Guernsey State Park burglaries. Exhibit 1 appears to be a partial transcript to the hearing at which he pled guilty and exhibit 2 is a portion of the presentence investigation prepared in that case.

No other positive identification of appellant as a participant was made. No incriminating evidence was obtained from him relating to the items acquired during the burglary and he denied any involvement in any burglaries in trial testimony.

■ The rules for our consideration of the constitutional inquiry of sufficiency of the evidence to convict date back to the territorial day case of *Palmerston v. Territory*, 3 Wyo. 333, 23 P. 73 (1890), and are easily stated. In reviewing sufficiency of the evidence for criminal conviction, this court must determine whether, after viewing the evidence and appropriate inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Corson v. State*, 766 P.2d 1155 (Wyo.1988); *Wells v. State*, 613 P.2d 201 (Wyo.1980).

Since Palmerston and again restated by Justice Blume in *State v. Osmus*, 73 Wyo. 183, 276 P.2d 469 (1954) further addressing constitutional terms, the criteria of proof beyond a reasonable doubt is reached by application of favorable inferences and construction where conflict exists and then evoking a requirement for certainty demanded for constitutional sufficiency.

" '[I]t is not enough that the evidence in the case goes to show his guilt, but such evidence must be entirely inconsistent with a reasonable supposition of innocence. Suspicions, however strong, or probabilities, however great, will not be sufficient to justify a conviction, but the evidence to justify a conviction must be positive, convincing, establishing the defendant guilty of the charge contained in the indictment beyond a reasonable doubt, * * *.' "

*Id.* 276 P.2d at 483–84 (quoting from *State v. Walser*, 318 Mo. 833, 1 S.W.2d 147, 151 (1927)).

If we exclude the changed testimony of Perkins, all that remains surely causes question of sufficiency. Ownership of a similar vehicle and staying with acquaintances of Perkins may have been evidence of opportunity, but hardly evidence of participation when otherwise no personal identification is made.

The State argues, however, that the missing evidence was supplied by initial statements of Perkins as later recanted at trial. Recognizing in perspective that Demerest could not or would not identify appellant as the third participant, Perkins testified on initial direct examination by the prosecution as follows:

Q. You say the last you knew. Do you remember all of these events that happened?

A. Not really, because at the time I was heavily induced on acid. I was taking acid quite frequently and drinking pretty heavy that day. A lot of that day I don't remember what happened that day. I was in what you call a black out.

Q. What did you have to drink?

A. I believe we were drinking beer.

Q. Okay, today in this courtroom—you're sworn under oath; is that right?

A. True.

Q. Do you have any recollection today in this courtroom of breaking into four cabins along Guernsey Lake on this day that we have been talking about on or around November 9th?

A. No, I don't.

* * *

Q. Do you have any idea if Roy Munson was there or not?

A. No, I don't. He was with me earlier that day, but I can't say he was with me.

Q. Do you have any idea if Stuart Demerest was taking part in these break ins?

A. No, I don't. I can remember earlier that the subject had come up but I can't say we did it that day.

Then, continued examination as cross-examination by the prosecutor elicited the record of the witness' sworn testimony with entry of his plea of guilty to the burglary offenses and a statement as written for the probation officer to complete a presentence investigation report after plea. In essence, the prosecutor read everything that was contained in the two documents and then, having completed that process, received the response from the witness that he did not remember the events related and could not attest to the accuracy of the documents.[1]

---

1. The presentence investigation report, in hand-written form, stated in part:

The *only* objection which was ever made to this evidence or relating to its effect came at trial after the documents had been, in effect, orally read to the jury as stating:

Q. [Prosecutor] Would you have—that is a short statement. Would you read that? I would like to hear your reaction to it as to whether or not you agree or differ with that today.

A. [Perkins] "Defendant's version. I, Morgan Perkins, on or about November 19, '86, did with two others, a Stuart Demerest and Roy Munson, broke into four cabins in Guernsey State Park. We started out going hunting and then Mr. Demerest brought up the idea of breaking in the cabins. We were drinking and we were on drugs, which I know is no excuse for my action. I told them I had three to five years over me and that I did not want to do this so that I was—it was dropped for about two hours then brought back up. That is when I said that we do it. After that I was planning to go to California to seek work. I had already gotten permission to go before all this happened so I left a couple of weeks later. Then I was asked to come back and face these charges and I came back on my own to face to what I did. When I went to Court in Platte County, I was set free on the charges. About a week later I went back and turned myself in on them." That is it.

Q. Were you lying to the probation officer at the time?

I Morgan Perkins on or about Nov 19–86 did with two others a Stuart Demerest & Roy Munson broke in to fo[u]r cabins in Gue[rn]sey State Park. We started out going hunting then mist[e]r Demerest brought up the id[e]a of br[e]aking in to the cabins. We were drinking and were on drugs whitch [sic] I know is no excuise [sic] for my action.
I told them that I had 3 to 5 years over me and that I did not want to do this so it was drop[p]ed for about two hours. Then brought back up that is when I said that we do it.
In sentencing testimony, he had earlier stated:

THE COURT: Would you tell me, Mr. Perkins, what your version is of what happened on or around November 9th around the Guernsey lake cabins?
THE DEFENDANT: We were drinking and hunting.
THE COURT: There were three of you, as I remember.

A. Mentally? Yeah, mentally I was still pretty well screwed up in the head and I probably was making some of that up. Most of the people in here probably don't * * * know what it would be like to be on acid and have your mind screwed up. I mean I tried to commit suicide before I was put in the penitentiary. My mind was not in the right—I was seeking help and no one gave me help.

Q. You remembered these things in a fair amount of detail at the time of Court.

A. That is because I had already heard that. The statement was read to me what Mr. Demerest said what went down that night.

Q. Did anyone ever ask you to point the finger at Roy Munson?

A. No, no one ever asked me nothing.

Q. So you just gratuitously—

A. I was a chronic liar before that. It goes right along with being an alcoholic and a drug abuser.

Q. How much time do you have left?

A. Too much.

Q. How much?

A. A year and a half.

Q. Do you ever worry about being labeled a snitch, testifying in Court against somebody?

A. It doesn't bother me.

THE DEFENDANT: Yes.
THE COURT: Who?
THE DEFENDANT: Stuart D[e]merest and Roy Munson and I.
THE COURT: Where is he at?
THE DEFENDANT: I tried to help the authorities try to find him. I had his address in California. As far as I know, that is where he is now.

* * * * * *

THE COURT: * * *
Mr. Perkins, what did you do with the stuff you took out of the cabins?
THE DEFENDANT: We stuck it in a culvert. That is where we left it. Roy Munson and I and my girlfriend were planning on going to California and apparently Mr. Munson loaded it up in his pickup and that is the last I knew where it was.

Q. Does it worry you you might be joined with the company of Roy Munson at some future time?

A. Excuse me?

Q. Does it worry you, you may be in the company of—

A. What are you getting around by that accusation?

Q. Are you worried that some physical harm might come to you?

A. No, I'm not.

[Prosecutor]: Your Honor, I'm not sure the most appropriate way of doing this, because these documents appear in the Court file. Before I begin maybe marking exhibits on here, I would like to admit both the transcript of the arraignment on March 3rd, 1987, and the statement that was written out and just read to the jury by Mr. Perkins. I would like to admit those—both of those documents into evidence. I—again, I'm not sure whether—if it's appropriate, I would just make clean copies from the Court file for admission.

[Defense Counsel]: *I object. It has been read to the jury. I believe they received them as evidence. I don't see there is anything to be gained. It would be different if they hadn't been read but they were read.*

[Prosecutor]: I beg to differ somewhat. Certainly all the questions by the Court and all the responses by Mr. Perkins have not been read into the record at this time.

[Defense Counsel]: I would say all the relevant portions have been.

THE COURT: Counsel, they have been offered—I note your objection, counsel.

[Defense Counsel]: Are you receiving the entire transcript of the trial (sic)?

THE COURT: I will receive the portions that were read.

[Prosecutor]: The portion that has to do with the factual basis?

THE COURT: That's correct. That portion of the transcript will be State's Exhibit 1 and it will be received. Mr. Perkins' handwritten statement will be received as State's Exhibit 2.

[Prosecutor]: Thank you, Your Honor.

THE COURT: Since I received them, [Defense Counsel], do you have any objection to copying those portions which will be pertinent and placing copies in the place of the originals, or do you want the originals in?

[Defense Counsel]: I have no objection to clean copies being submitted. [Emphasis added.]

We are consequently faced in the constitutional inquiry about sufficiency of the evidence with this testimony as the principal basis to affirm conviction. No pretrial motion in limine was made. No objection to the oral inquiry during trial was taken. No special instruction about the effect of the hearsay testimony was requested or given. No limiting instruction was tendered in the interest of appellant.

In final argument, the subject was revisited by the prosecutor without objection in the following terms:

Two people who have been convicted of those burglaries. As they said, neither in Perkins' former testimony—and I guess I have got to use that word former testimony—and in the testimony of Stuart Demerest today, there were three people out there, two of them have been convicted, Roy Munson is the third.

When looking at those people who were testifying is there any reason that you heard why Morgan Perkins and Roy Demerest would be fabricating this to frame Roy Munson? Was there any reason for them to, you know, conjure up these stories? They both said there was no pressure to point the finger to say that Roy Munson was involved. They came up with those names when they testified. The name of Roy Munson. As far as personal relationships, I don't know. You heard the testimony, you can boil it all down as to what conceivable reasons Perkins and Demerest would have for bringing in Roy Munson falsely.

Unquestionably, as recognized by the State in appellate brief, this documentary evidence as first orally read to the jury was the vehicle of conviction. Even now on appeal, this court is presented with neither

an ineffectiveness nor a plain-error argument for reversal. In the absence of trial court objection or appellate argument, we will not undertake to analyze the complex and diverse issues that could relate to this evidence within the context of a sufficiency of the evidence appellate review to consider how and for what purposes the plea transcript of another party and the presentence investigation statement were properly admissible if objection had been taken. Cf. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) and *Hardison v. State*, 763 P.2d 52 (Nev.1988). As admitted and received, the identification testimony not only sufficed, but rationally assured conviction of appellant. The persuasive effect was likely greater than if the witness had forthrightly identified appellant in his initial examination by the State's attorney. Sufficiency of the evidence to sustain conviction existed.[2]

■ We would then turn to the second issue raised by appellant as the unconstitutionality of the prosecutor veto provision found in the sentencing statute, W.S. 7–13–301. The available record is again singularly uncommunicative. The judgment and sentence recited and then provided as a sentence:

4. That the Defendant requested consideration under the First Offender Statute, W.S. Sec. 7–13–301, but the State did not consent, as is required under the statute.

THEREFORE, IT IS HEREBY ORDERED that the above-named Defendant, Roy Munson, be sentenced to serve a term of not less than three years, nor more than five years, in the Wyoming State Penitentiary, located at or near Rawlins, Wyoming.

IT IS FURTHER ORDERED that the imposition of the prison sentence be suspended, and the Defendant is placed on supervised probation for a period of five years, * * *.

The only reference in transcript material came at sentencing:

[Defense Counsel]: Just briefly, I might indicate for purposes of Mr. Munson, I think although the state has not agreed with him being placed under Section 301, he on his own would like to know whether the Court feels that if the state did agree that he would be a candidate that you would consider him for that, just personally.

THE COURT: Well, I don't make those kinds of prospective—if the state doesn't agree that is the sum and substance of it.

Counsel for appellant did not then make the argument now presented that the veto provision was unconstitutional. Consequently, this court cannot tell how the trial judge would have ruled if the argument had been made. Furthermore, we do not know what the trial judge would have ruled even if he had elected to ignore the veto provision and considered sentencing in the same fashion as before prosecutorial veto enactment. Under these circumstances, this court will follow the general rule that the constitutionality of a statute will not be considered if first raised on appeal.[3]

2. No impeachment instruction was requested or given.

3. Still not presented on appeal within the context of constitutionality of the veto provision is its process of enactment as an amendment to the Title VII revision which was enacted as Wyo.Sess.Laws ch. 157, § 3 (1987). Use of a revision statute to create a prosecutorial veto within a historical deferred conviction process has existed since 1909 and can implicate constitutional validity in passage of Wyo. Const. art. 3, § 20: "No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose." Wyo. Const. art. 3, § 24: "No bill, except general appropriation bills and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject is embraced in any act which is not expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

The issue of constitutionality of the amendment of W.S. 7–13–301 is presently before this court on a bill of exceptions following a trial court determination of unconstitutionality, where both substantive and procedural constitutionality can appropriately be addressed after proper briefing by the offices of the public defender and attorney general.

*Knudson v. Hilzer,* 551 P.2d 680 (Wyo. 1976).

Affirmed.

CARDINE, C.J., filed a specially concurring opinion, with whom GOLDEN, J., joined.

THOMAS, J., filed a specially concurring opinion.

CARDINE, Chief Justice, specially concurring, with whom GOLDEN, Justice, joins.

I concur in the result only. The evidence was sufficient to sustain the conviction. That is enough. I do not agree with the court's suggestion of ineffectiveness of counsel or that there exists complex and diverse evidentiary questions not addressed by the parties. That suggestion is unnecessary. It will surely result in further proceedings that may have little or no merit.

THOMAS, Justice, specially concurring.

I am in accord with the result which is reached by the majority opinion in this case. I have some concern, however, that language from the majority opinion might be perceived by Munson as suggesting a viable basis upon which he could invoke postconviction relief. The majority notes that we have not been presented with an ineffectiveness of counsel or plain error argument for reversal. This statement is made in the context of the utilization of a statement by Perkins in connection with his pre-sentence investigation and Perkins' testimony under oath to establish the factual basis of his own plea of guilty as evidence of Munson's identity. Munson might hope that, had an objection been made, the evidence would not have been admissible.

I perceive that these statements are examples of an appropriate exception to the hearsay rule when the declarant is unavailable pursuant to Rule 804, W.R.E. That rule states in pertinent part:

"(a) *Definition of unavailability.—* 'Unavailability as a witness' includes situations in which the declarant:

\* \* \* \* \* \*

"(3) Testifies to a lack of memory of the subject matter of his statement; \* \* \*

\* \* \* \* \* \*

"(b) *Hearsay exceptions.—*The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

"(3) Statement Against Interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, \* \* \* that a reasonable man in his position would not have made the statement unless he believed it to be true."

The statement to the probation officer and the testimony under oath to provide a factual basis for Perkins' plea of guilty satisfy the requirements of this rule. Consequently, the district judge would have admitted them into evidence even though an objection had been lodged on the ground that the statements were hearsay.

It also seems to me that in the context of this appeal, the information set forth in footnote 3 is superfluous. With these additional comments, I concur in the disposition of the case in accordance with the majority opinion.