THE STATE v. JOHN F. THOMAS, Appellant.—1 S. W. (2d) 157.

Division Two, December 31, 1927.

844

J. H. *Whitecotton* and *Meriwether & Meriwether* for appellant.

*North T. Gentry,* Attorney-General, and *A. B. Lovan,* Assistant Attorney-General, for respondent.

BLAIR, J.—Appellant was tried in the Circuit Court of Monroe County for the crime of having carnal knowledge of a female child under the age of consent. [Sec. 3247, R. S. 1919, as amended by Laws of 1921, p. 284a.] The first trial resulted in the conviction of appel-

lant and a sentence of two years in the penitentiary. A new trial was granted and upon the second trial appellant was again found guilty and his punishment was then assessed by the jury at imprisonment in the State Penitentiary for a term of four years. After moving unsuccessfully for a third trial, appellant was duly sentenced upon the verdict and thereafter appealed to this court.

The first matter for consideration is the motion to dismiss the appeal, which was taken with the case. The motion is based upon the admitted facts that the appeal was granted May 29, 1926, and that the transcript of the record and bill of exceptions was not filed in this court until May 31, 1927. This constituted a failure to perfect the appeal within twelve months. The motion to dismiss the appeal should be sustained, unless we conclude that appellant has shown good cause for his default. [Sec. 4107, R. S. 1919.]

Appellant has filed suggestions supported by affidavits opposing the motion to dismiss the appeal. The facts stated therein, which are wholly uncontradicted, are as follows: The appeal was granted May 29, 1926. On May 27, 1927, the Clerk of the Monroe County Circuit Court forwarded by registered mail a package containing the transcript of the record and bill of exceptions, properly addressed to the clerk of this court. A letter of the same date, addressed to the clerk and containing the docket fee, was mailed with the package containing the transcript. Said letter was received by our clerk May 28, 1927. Both the letter and the package were put on the Wabash train which left Paris, Missouri, at 4:22, P. M., May 27, 1927, and were due to reach Jefferson City on May 28, 1927.

May 28th was Saturday. Monday, May 30th, was Decoration Day and a holiday. The transcript was marked filed May 31, 1927. Appellant makes no attempt to account for the failure of the transcript to reach our clerk before May 31, 1927. We are not advised concerning the course of business of the United States post office in handling registered mail, but are confident that the delay in filing the transcript in this court was caused through a combination of the rules of the post office and successive occurrence of a Sunday and a holiday. What more appellant could have done that he did not do is not apparent. Caution may have dictated mailing the transcript a day or two earlier. Such mailing would undoubtedly have perfected the appeal within twelve months. However, we think a mere statement of the undisputed facts demonstrates good cause on appellant's part for failure so to perfect his appeal. The motion to dismiss the appeal is overruled.

The evidence offered on the part of the State tended to prove the following facts: Shortly after noon on April 27, 1925, Helen Bradley, the prosecutrix, rode from Monroe City with appellant and one Harold Henderson in a Ford roadster of the latter to Nolen school house

about three miles south of that city. Prosecutrix there had sexual intercourse with appellant and shortly afterwards with Henderson. She testified to the occurrence of similar relations with appellant two or three times prior to that occasion and after the first of April. On each of the former occasions she had consented to the act after solicitation on appellant's part. On one previous occasion prosecutrix had asked another girl to go along as Henderson's companion. They went to the same school house. At that time prosecutrix and appellant had sexual relations in the school house, while Henderson and the other girl went outside. The inference was that Henderson and the other girl were similarly engaged, but the record contains no direct proof of that fact. According to prosecutrix, Henderson accompanied her and appellant twice—once in company with the other girl, and the last time when the prosecutrix was the only girl.

There is no proof of force on the last occasion when prosecutrix testified that she had sexual relations with both young men. She testified to the employment of endearing terms and the occurrence of some fondling of her person, and that, when both young men were present and when she was reluctant to comply with appellant's suggestion of sexual relations, appellant cursed her and told her to lie down on the floor. On the other occasion, she seemingly consented, after more or less persistent solicitation. She was not ignorant of appellant's designs upon her, because she testified to a prior ride with him when he had solicited her without success. In accepting later invitations to ride with appellant, if her story was true, she must have been aware of his purpose toward herself.

Appellant was twenty-three years old. Prosecutrix, her mother and the attending physician testified, that prosecutrix was born August 23, 1909. If this was true, she was fifteen years of age at the time of the act complained of. This proof of the age of prosecutrix was not accepted by the appellant, and much sharp cross-examination was employed to break down the State's proof on the point. Appellant's proof went no further than rather unsatisfactory evidence of a contradictory former statement of the mother of prosecutrix and proof of other circumstances, including the failure of the Illinois birth records to corroborate the attending physician. The physician based his testimony upon the charge for the service entered in his day book in due course. The school records for the previous fall showed the age of prosecutrix as fifteen years. This information was obtained from prosecutrix herself, but the record entry was made a number of months before the occurrence of the act complained of. Appellant offered no independent proof of the age of the prosecutrix.

The inference we draw from the evidence is that prosecutrix felt outraged at being cursed and being compelled, or at least overpersuaded, to submit to both appellant and Henderson on April 27, 1925.

She testified that she cried all the way back to town. A few days later she took her mother into her confidence and went to consult a physician. He required her to bring her parents and in their presence made an examination of her. He testified to a ruptured hymen, evidencing prior copulation, and found some roughness. As prosecutrix had experienced sexual relations several times during the month previous to the examination, no evidence of fresh rupture appeared.

Appellant denied ever having had sexual relations with prosecutrix and testified that the only time he was ever out to the Nolen school house with prosecutrix was on April 27, 1925, and that Henderson and the other girl were along at that time. The other girl and Henderson corroborated appellant in his testimony that this visit occurred on April 27th and further that appellant did not have any opportunity to and did not have sexual relations with prosecutrix on that trip. Henderson specifically denied having had sexual relations with prosecutrix on April 27th or any other time, and said he was out to the Nolen school house but once and that was upon the occasion when the two couples of young people were there.

We are unable to concur in appellant's contention that the evidence was not sufficient to support the verdict. It is true that there were some contradictions of a more or less serious nature and there were also discrepancies between the testimony of the prosecutrix at the trial and her testimony at the preliminary hearing. We are further aware that, as to the commission of the act charged, she was not corroborated by the testimony of any person who saw her with Henderson and the appellant. But those matters were for the jury. There was nothing impossible or even unusual in her story. We know from our own records that acts, similar to those described by her, have been adjudged to have been committed from time to time. There was nothing in her story contrary to the physical facts of the case. Her story was like many others which are presented to our criminal courts from year to year.

At the trial prosecutrix told a clear, straightforward and unshaken story. She admitted that she had testified at the preliminary hearing to only one act on appellant's part and then had not implicated Henderson. The reason given by her for failing to make full disclosure to her parents and at the preliminary hearing was that she was ashamed to tell it all. She did not disclose the alleged act of Henderson until about the time of the first trial. However, these were all matters for the jury to consider in determining the credit to be given to her positive testimony at the trial.

We are aware that this court has reversed and remanded some cases where the evidence was deemed to be contrary and unreasonable. We have had previous occasion to consider such decisions and to dis-

tinguish them from cases then under consideration. We can now add nothing to what we said in State v. Wade, 306 Mo. 1. c. 465 to 470, 268 S. W. 52, where we reviewed and distinguished many of the cases relied upon by appellant in the case at bar.

The jurors were the exclusive judges of the credibility of the prosecutrix as a witness and the truth of her story. They believed her story and disbelieved that of appellant. The trial judge placed the seal 'of his approval upon the verdict. The truth of the story of prosecutrix is a closed incident. We have no more right to set aside the verdict in a rape case, because perchance we might not think the story to be true, than we would have to set aside a conviction in a grand larceny or murder case or any other criminal prosecution. Where the story told by the prosecutrix in a rape case is not impossible in itself and does not fail to find a counterpart in human experience, it amounts to an invasion of the province of the jury for an appellate court to set aside the conviction merely because the prosecutrix has told conflicting stories concerning the alleged act and the story is uncorroborated and appears unconvincing to the appellate court.

Prosecutrix testified to every fact constituting an essential element of the crime charged against appellant in a clear, straightforward and positive manner. We are unable to say what it was in the manner of giving her testimony which convinced the jury of its truth and governed the trial court in its supervision and approval of the verdict, or what it was in the appearance and demeanor of appellant and his witnesses which failed to bring conviction of truth to the minds of the jury. There was substantial evidence to support the verdict. The trial court did not find the verdict to be against the weight of the evidence. We cannot disturb such verdict on the ground that the evidence was not entitled to credit, without overstepping the limitations of our legitimate function as an appellate court.

The assignments in the motion for new trial as to error of the trial court in the admission and exclusion of evidence and the giving and refusal of instructions are mostly too general to meet the requirements of Section 4079, Laws 1925, page 198. [State v. Standifer (Mo. Sup.), 289 S. W. 856.] More specific complaints going to the evidence and the instructions are separately made and will be noticed in the course of the opinion.

A specific assignment challenges the action of the trial court in admitting the testimony of prosecutrix relative to her alleged act of sexual intercourse with Harold Henderson immediately following the act of which she accused appellant and which she said occurred in appellant's presence. We are referred by appellant's brief to page 8 of the transcript of the testimony, from which we quote the testimony of prosecutrix as follows:

"Q. And what, if anything, else occurred? A. And then Hooley Henderson had intercourse with me.

"Q. State what Henderson did, if anything? A. He took out his privates—

"Counsel for defendant objects that is not proper.

"COURT: That is not the charge here; she stated that he had intercourse with her, further details not proper.

"Counsel for defendant objects to any further statement, going into the question.

"COURT: Objection sustained."

The record furnishes no basis for appellant's contention that reversible error was committed in this instance. In the first place, it appears that no objection whatever was made when prosecutrix testified to the fact that Henderson had sexual relations with her. Objection was made only when, in response to a subsequent question, prosecutrix undertook to enter into details. The objection then made was sustained. Counsel took no further steps in the matter and were apparently satisfied with the ruling of the court. There was no occasion for an exception and none was saved. The admissibility of the proof of Henderson's act was not challenged below and is not before us upon appeal. The point was not properly saved. We cannot consider the belated contention made in this court.

Appellant has neither briefed nor argued an assignment, made in the motion for new trial and in the assignment of errors set forth in his brief, that the trial court improperly admitted proof of alleged acts of sexual intercourse with appellant by prosecutrix prior to the act of April 27, 1925. It may be that the point is not further stressed by counsel because the ruling of the trial court, in permitting such proof of prior acts to be made, is in entire harmony with the case of State v. Cason (Mo. Sup.), 252 S. W. 688, wherein that point is fully considered by this court and ruled adversely to the contention of appellant.

The trial court permitted the State, as part of its case in chief, to read in evidence a transcript of appellant's testimony given at the former trial upon the same information. Error is assigned to such ruling. The record discloses that the trial court excluded this evidence, and later set aside its ruling, and admitted the transcript in evidence before appellant testified as a witness in his own behalf.

It is contended that this testimony was not properly identified as the testimony of appellant upon the trial. No such objection was made at the time the testimony was offered or in the motion for new trial. In fact, counsel assumed that the transcript was that of appellant's former testimony when he said: "We object to the offer made by the State of the statement, whole statement made by the

defendant on the former trial as shown ·by the transcript offered.'' It is too late to urge in this court for the first time the question of the correctness of the transcript. The other objections urged were that the testimony did not tend to show that appellant had committed any crime and was immaterial to any issue in the case and did not constitute any admission against the interest of appellant and was not inconsistent with appellant's plea of not guilty.

Appellant cites no authority in support of his contention that the court erred in admitting said transcript in evidence. The right of the State generally to offer evidence of this character is well settled. [State v. Eddings, 71 Mo. 545, 1. c. 548; State v. Jefferson, 77 Mo. 136.] True, the testimony given by appellant at the former trial made no direct admission of guilt. The prosecuting attorney stated that he wanted the evidence because of appellant's statement therein that he and Henderson were driving aimlessly about town, when he saw prosecutrix and (at her request) took her riding, and because appellant admitted that prosecutrix ·sat in his lap after the two couples got into the one-seated automobile. Those were certainly circumstances which the State could properly show in chief. The State was therefore entitled to show them by the admission of appellant. As to other matters shown, the appellant was benefited more than he was injured by the use which the State made of his former testimony. The transcript showed that his testimony at the last trial, as far as it went, was consistent with his former testimony.

We are unable to ·see how appellant's defense was in any wise prejudiced by the admission of his complete former testimony. The worst that can be said of the action of the prosecuting attorney, in offering the testimony in the ʹsecond trial, is that such act does not appeal to us as wise from the standpoint of the State. If there were particular statements in the former testimony deemed of value as damaging admissions, industrious and competent counsel could easily separate them from· the unimportant and confusing remainder and present such admissions only for the consideration of the jury. But we find no prejudicial error in the court's ruling.

We quote from appellant's assignment of Error XI, as follows:

''The trial court committed error in permitting Dr. Dearborn, over the objection ˉof defendant, to testify on behalf of plaintiff to the effect that E. R. Campbell, who was alleged to have been a prospective witness for defendant, was mentally incompetent and otherwise unreliable, and was referred to as an associate counsel ·for defendant. The said E. R. Campbell did not testify in the case.''

It appeared that Dr. Dearborn, who testified to the date of birth of prosecutrix, lived in Illinois and was anxious to get home. Counsel for prosecutrix anticipated that a witness named Campbell would testify on behalf of appellant. The State desired Dr. Dearborn's testimony to impeach or discredit Campbell as a witness. The court permitted the evidence to be given out of order to accommodate the Illinois physician, with the understanding that the testimony in regard to Campbell would be stricken out if Campbell did not testify later. Appellant's counsel did not inform the court that the defense did not intend to use Campbell as a witness. It must also be remembered that this was the second trial of the case and the trial judge may have been fully justified, in view of his experience in presiding at the former trial, in thinking that Campbell would testify. No objections were made that the testimony was offered out of time. The objection was that Campbell's activities in the case were immaterial.

At the close of appellant's case and when it had developed that Campbell had not been used as a witness by the defense, the trial court, evidencing the most careful and commendable consideration of the rights of appellant and without even a suggestion to that end from appellant's counsel, brought up the subject of the admission of this part of Dr. Dearborn's testimony and called attention to the fact that Campbell had not testified as a witness. Thereupon counsel moved that such evidence be stricken out. The court not only sustained the motion, but carefully instructed the jury that such testimony was withdrawn from its consideration "and could have no place in your memory from now on." This closed the incident so far as the record discloses.

We cannot say that the trial court abused its discretion in permitting the evidence to go in out of its proper order. Even if such action was error, the error was cured by the subsequent action of the court in striking out the testimony and instructing the jury to disregard it. The assignment is overruled.

Appellant contends that the trial court should have discharged the jury at the conclusion of the argument for misconduct of special counsel for the State in his closing argument. This complaint is covered by appropriate assignments in the motion for new trial. Error is also assigned to the rulings of the court upon objections of counsel made during the course of the argument.

After considering the numerous complaints set out in the motion for new trial, appellant has boiled down his contention in his Points and Authorities to the following:

"The trial court committed error in permitting Judge Barnes, in his closing argument for the State, to appeal to the passion and prej-

udice of the jurors. In referring to the statement of facts by the prosecuting witness, he said, 'I believe it as firmly as I believe the Lord's Prayer.' He referred to the 'animal nature' of John Thomas. He stated to the jury, 'Yes, he is guilty, as guilty as it is possible for the English language to describe.'

"He referred to Goldie Carpenter, one of defendant's witnesses: 'Why they talk about Goldie Carpenter, I am surprised that you mention her, why Great God Almighty I would have avoided it, you men heard her and saw her demeanor on the stand. I would not believe a word she said if a rope were around my neck and I knew if I did not believe her that I would be hung I would not believe it, I don't believe the truth is in her bones.'

"The court committed error in not discharging the jury as requested by defendant's attorney."

In so far as the appeal to the passion and prejudice of the jury is concerned, we find nothing in the closing argument of the State more perfervid than the closing argument of appellant's counsel. The two arguments only are preserved in the record. Outside of the specific matters to be noticed, we find nothing in the argument of the State's counsel which called for any action further than that taken by the trial court. Specific complaint is made of the statement by special counsel for the State when he said "I believe it as firmly as I believe in the Lord's Prayer."

The record does not disclose any objection to this statement on the part of appellant, nor was the point saved by the subsequent motion to discharge the jury on the general ground of "misconduct of counsel, Judge Barnes, in the argument." The other two specific incidents referred to in the quotation above made from appellant's brief appear together in the transcript. The only objection made by appellant's counsel, if it could be called an objection at all, was the remark: "Little too stout I think." This statement does not even purport to be a formal objection. No ruling was made by the court and none appears to have been expected. It appears rather as a comment by the appellant's counsel upon the extravagant language used by counsel for the State in saying he would not believe the witness if he had to be hanged for not believing her.

Counsel cannot sit by and fail to make objection to argument while it is being made, for fear of incurring the displeasure of the jury, and then save the question of the propriety of the argument for the purpose of attempting to secure a new trial or the reversal of the judgment by a subsequent motion to discharge the jury, as was done here. Counsel will not be permitted to speculate upon the outcome of the trial in any such manner.

Finally, when counsel moved for the discharge of the jury for misconduct of counsel for the State in appealing to the passion of the

jury in his closing argument, he assigned the specific reason "especially as to the making of the statement 'that the defendant was drunk on that occasion.' " This assignment is based upon a statement in argument by the State's counsel when he said that appellant had ravished prosecutrix after he had given her intoxicating liquor and appellant himself had taken it. No objection was made at the time. After counsel had concluded his argument, the following incident appears in the record:

"MR. WHITECOTTON: I wish to except to the statement 'that the defendant was drunk,' no evidence to that effect whatever.

"JUDGE BARNES: I said 'probably.'

"COURT: The Senator is correct in the statement; no evidence in the case that John Thomas was drunk, and you will disregard the statement made by Judge Barnes in his argument as to being drunk. Is that sufficient Colonel?

"MR. WHITECOTTON: I think so."

In overruling the motion to discharge the jury, based generally upon the alleged appeal to the passion of the jury and specifically upon the alleged statement of counsel that appellant was drunk, the trial court said:

"COURT: In view of similar appeal of defendant's counsel, don't think the motion is well taken; the court has sustained the objection to the statement of counsel, Judge Barnes, to the effect 'that the defendant was probably drunk,' corrected that and admonished the jury to disregard it; and the counsel when the court called upon him expressed his satisfaction with the sufficiency of that ruling and requested nothing further.

"MR. WHITECOTTON: I did not want to in the presence of the jury.

"COURT: Don't think any grounds for discharging the jury; all of counsel in the case addressed themselves a good deal to passion, defendant's counsel as much perhaps as State's counsel; and the State's counsel's basis in such exercise was induced, in my belief, by the challenge laid down by defendant's counsel to State's counsel who closed the case."

The trial judge's ruling indicates his thorough mastery of the situation and his complete understanding of the case. No error was committed in this ruling. Nor do we find that any error was committed otherwise during the course of the trial as to any ruling properly brought before us.

There is no evidence of bias and prejudice on the part of the jury. Two juries have found appellant to be guilty. A new trial was granted after the first trial. The record does not disclose the reason which actuated the trial court in granting such new trial. It does not appear that the verdict was set aside on the ground that it was against

the weight of the evidence. The mere fact that the second jury assessed a longer term of imprisonment than the first one did does not tend to prove the existence of bias and prejudice on the part of the jury in the last trial. Each jury had the right to and did believe the story of prosecutrix, and had the right to and did disbelieve the stories of appellant and his principal witnesses and to assess such punishment as it felt the offense of appellant deserved. There is not a word in the record upon which to base the charge that the last jury was prejudiced.

We have examined the information and find it to be in a form approved in an unbroken line of cases in this State. The verdict was responsive to the information and found appellant "guilty as charged in the information" and appropriately assessed the punishment agreed upon by the jury. In passing sentence upon appellant, the trial court accorded him every right to which he was entitled under the law and entered a judgment based upon and authorized by the verdict. The case was exceptionally well tried. No error was committed of which appellant can justly complain.

The judgment is affirmed. All concur.