**Phillip TAGEANT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 86–257.**

Supreme Court of Wyoming.

June 4, 1987.

Leonard Munker, State Public Defender, Martin J. McClain, Deputy State Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and Timothy C. Kingston, Student Intern, Wyoming Defender Aid Program, for appellant (defendant).

A.G. McClintock, Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Joanne Buchin, Legal Intern, for appellee (plaintiff).

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This appeal is from a judgment and sentence filed following a jury trial in which appellant Phillip Tageant was found guilty of burglary in violation of § 6-3-301(a) and (b), W.S.1977.

We affirm.

Appellant sets out the following arguments:

1. "THE TRIAL COURT COMMITTED ERROR WHEN IT ADMITTED THE CO-DEFENDANT'S HEARSAY STATEMENT."

2. "THE EVIDENCE AGAINST THE DEFENDANT WAS NOT SUFFICIENT TO FIND HIM GUILTY BEYOND A REASONABLE DOUBT. THE TRIAL COURT COMMITTED ERROR BY NOT GRANTING THE APPELLANT'S MOTION FOR A JUDGMENT OF ACQUITTAL MADE AT THE END OF THE PROSECUTOR'S CASE-IN-CHIEF."

Sometime between midnight and seven o'clock in the morning on February 5, 1986, the Hideaway Bar in Mills, Wyoming, was burglarized. When Dale Sterner, the owner of the bar, arrived for work that morning, he discovered that the lock on the front door was broken and the dead bolt was bent. He later discovered that the cigarette machine and an electronic game had been tampered with and that approximately 334 quarters and 40 packs of cigarettes were missing from the machines.

Sterner called the police, and Officer Schirlinger of the Mills police department responded. When he arrived at the bar,

Officer Schirlinger examined the front door, the cigarette machine, the electronic game, and the vicinity outside the bar. Fresh snow had fallen the night before, and the officer noticed two sets of footprints leaving the premises. One set of footprints appeared to be from boots and the other set from flat-soled shoes. The officer followed both sets of footprints from the premises of the bar to a trailer home approximately one block away.

At this point, the officer requested assistance, and Deputy Burgess of the Natrona County sheriff's office responded. The two officers approached the trailer and knocked on the door. After some time, a child answered. Officer Schirlinger asked the child to get her parents. A few minutes later, Bill Corson, appellant's co-defendant, answered the door. The officers asked if they could speak with Corson. He agreed and invited the officers into his home. Once inside, Officer Schirlinger informed Corson that they were investigating a burglary which had occurred at the Hideaway Bar.

Deputy Burgess noticed a pair of wet shoes in front of the stove in the kitchen. When questioned about the shoes, Corson informed the officers that the shoes belonged to appellant. Officer Schirlinger then asked Corson to answer some questions concerning the burglary and read Corson his Miranda warnings, after which Corson agreed to talk with the officers.

Officer Schirlinger asked Corson if appellant was present in the trailer. Corson informed the officer that appellant left at approximately six o'clock on the previous evening. The officer then asked if appellant lived in the trailer with Corson and was informed that he did not. The officer asked several times whether appellant had spent the previous night at the trailer, and Corson repeatedly told him that appellant had left at six o'clock on the previous evening. After further questioning, Corson went to the back of the trailer and returned with appellant. The officers completed their questioning and took appellant and Corson to the Mills police department.

At approximately one o'clock on the afternoon of the same day, officers from the Mills police department and other law enforcement agencies executed a search warrant at Corson's trailer. They seized a tire iron, a pry bar, and a screwdriver from underneath the kitchen sink. The officers also took photographs of the broken locks on the front door of the bar and the footprints in the snow. They packaged the wood door jam and the locks from the broken machines and sent them to the state crime lab for analysis, along with the tools taken from the trailer.

The officers later discovered that appellant visited the Hideaway Bar from approximately 9:30 to 10:15 p.m. on February 4, 1986, the night before the burglary. At that time, he used a different name and purchased some whiskey, Dr. Pepper, and food items, which were found at Corson's trailer.

On February 6, 1986, appellant and Corson were charged with burglary. The State thereafter filed a motion to consolidate the actions for trial, which motion was granted on March 24, 1986. On June 2, 1986, the action against Corson and appellant proceeded to trial before a jury.

During the trial, the investigating officer was allowed to testify that Corson told him several times that appellant was not present in the trailer and that appellant had left the previous evening. Appellant now claims that the statements made by his co-defendant and admitted into evidence through the testimony of the investigating officer were inadmissible hearsay.

In support of this contention, he cites *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), wherein a witness was permitted to testify at a joint trial that Bruton's co-defendant confessed and implicated Bruton in the crime. The United States Supreme Court held that the trial court erred in allowing the testimony "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [Bruton's] guilt." Id. at 126, 88 S.Ct. at 1622. Appellant's reliance on *Bruton v. United States*

is misplaced. There, the Supreme Court specifically noted that "the hearsay statement inculpating [Bruton] was clearly inadmissible against him under traditional rules of evidence." Id. at 128 n. 3, 88 S.Ct. at 1623 n. 3. In contrast, the statements at issue in the present case do not constitute hearsay and were not inadmissible against appellant under Rule 801, W.R.E.

Rule 801 states in pertinent part:

"The following definitions apply under this article:

"(a) *Statement.*—A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.

"(b) *Declarant.*—A 'declarant' is a person who makes a statement.

"(c) *Hearsay.*—'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted.*" (Emphasis added.)

■ Thus, a statement which is not offered to prove the truth of the matter asserted is not hearsay. See also 4 Louisell and Mueller, Federal Evidence § 417 (1980), and 6 Wigmore, Evidence § 1766 (Chadbourn rev. 1976). Corson's statements that appellant was not present and that he left the previous evening were not offered to prove that appellant was in fact not present. On the contrary, evidence was later introduced which showed that appellant was present. "Statements which are introduced solely for the purpose of proving that they were made as a predicate for later proof that they were false are not hearsay." *United States v. Moore*, 748 F.2d 246, 248 (5th Cir.1984). See also *United States v. Hathaway*, 798 F.2d 902 (6th Cir.1986).

■ Appellant also asserts that the admission of the testimony regarding Corson's statements violated his right to confront the witnesses against him guaranteed by the Sixth Amendment. Again, appellant cites *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, in support of his claim. As previously indicated, in *Bruton v. Unit-*

*ed States,* the United States Supreme Court held that a defendant is deprived of his Sixth Amendment right of confrontation when a nontestifying co-defendant's confession "expressly implicating" the defendant is introduced at their joint trial. The United States Supreme Court found the extrajudicial statement to be so "powerfully incriminating" as to be "devastating to the defendant" and to "pose a substantial threat to [the defendant's] right to confront the witnesses against him," id. at 135–37, 88 S.Ct. at 1627–29, even though the jury was instructed to not consider the confession against the defendant.

In an effort to limit the scope and effect of the rule established in *Bruton v. United States,* the United States Supreme Court recently held that the admission of a non-testifying co-defendant's confession does not violate the confrontation clause when a proper limiting instruction is given and "the confession [is] not incriminating on its face [but becomes] so only when linked with evidence introduced later at trial." *Richardson v. Marsh,* — U.S. —, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987). Applying this two-part inquiry to the present case, we hold that the admission of Corson's statements did not violate appellant's right of confrontation. Although no limiting instruction was given, none was requested. It is clear that a trial court must give a limiting instruction only upon request; it is not required to give one on its own motion. *Sybert v. State,* Wyo., 724 P.2d 463 (1986); Rule 105, W.R.E. In addition, the statements made by Corson concerning appellant's absence from the trailer were not incriminating on their face but became so only when linked with evidence introduced later at trial. While it may be that appellant could have minimized the effect of any inferences raised by the extrajudicial statements in question had he been able to cross-examine Corson, we do not find a reasonable possibility that the outcome would have been different in light of the other evidence presented.

 Appellant also claims that the evidence presented at trial was insufficient to sustain a guilty verdict. At the outset, we must reiterate the standard of review with respect to the sufficiency of the evidence:

> "[W]e examine the evidence in a light most favorable to the state to determine if there is sufficient evidence to uphold the verdict." *Stephens v. State,* Wyo., 734 P.2d 555, 558 (1987).

See also *Capshaw v. State,* Wyo., 737 P.2d 740 (1987); *Scadden v. State,* Wyo., 732 P.2d 1036 (1987); *DeSersa v. State,* Wyo., 729 P.2d 662 (1986).

The jury had evidence before it of two sets of footprints leading from the bar to the trailer—one of flat-soled shoes and one of cowboy boots. There were no other footprints. On the morning after the burglary, appellant's soggy, flat-soled shoes were discovered in the trailer. Corson owned only a pair of cowboy boots. Both Corson and appellant were present in the trailer the morning after the burglary. Appellant had been in the bar where the burglary occurred on the previous night, using a different name. Tools suitable for use in such a burglary were found in the trailer in a place accessible to both of the men. The paint chips on the tools were chemically similar to the paint chips taken from the bar.

On the basis of this evidence, the jury could have found that the tools were used in the burglary, that the footprints were those of appellant and Corson, that Corson attempted to cover up the burglary, that appellant was concealed in the trailer, and that both appellant and Corson had access to the burglary tools. Applying the applicable standard of appellate review, this Court finds that there was sufficient evidence for the jury to find appellant guilty beyond a reasonable doubt.

Affirmed.