**Bill CORSON, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 88–26.

Supreme Court of Wyoming.

Dec. 27, 1988.

Leonard Munker, State Public Defender, Steve Weerts, Senior Asst. Public Defender, Michael Cornia (argued), Student Intern, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and Kathleen B. Simon, Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., John R. Renneisen, Deputy Atty. Gen. Karen A. Byrne, Asst. Atty. Gen., and Michele J. Neves (argued), Legal Intern, for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and BROWN, J., Retired.*

CARDINE, Chief Justice.

This appeal is from appellant's burglary conviction by a seventh judicial district court jury. The only issue presented for our determination, as stated by appellant, is as follows:

---

* Retired June 30, 1988.

"Did the prosecution fail to present sufficient evidence to find the defendant guilty beyond a reasonable doubt?"

We affirm.

On February 5, 1986, between 12:15 a.m. and approximately 7:00 a.m., the Hideaway Bar in Mills, Wyoming was burglarized. Taken in the burglary were 334 quarters from a video machine, 20 packages of Marlboro cigarettes, 20 packs of Marlboro Lights, 10 packs of Winstons, 10 packs of Merit cigarettes, money and a coin box from a cigarette machine. The employee who closed the bar testified that after locking the front door of the bar from the inside, he left through the back door. The employee stated that although it had been snowing heavily earlier, the snowfall had subsided as he was leaving the bar.

At approximately 7:00 a.m. that morning, the bar owner, Mr. Dale Sterner, entered the Hideaway Bar through the back door. He did not recall seeing any footprints near the back door. Once inside the bar he noticed that the front door was ajar. Upon further examination, he determined that there had been a break-in and notified the Mills police department.

Officer Dan Schirlinger of the Mills police department responded to the burglary call. He noted two sets of footprints in the heavy wet snow near the front door. One set of footprints appeared to be made by a soft-soled shoe, and the other set by a cowboy boot with pointed toes. While the footprints led away from the bar, there was apparently no evidence of prints leading to the front door. The officer followed the footprints from the Hideaway Bar to the front door of appellant's trailer. There were no footprints coming away from the front door of the trailer, and there were no footprints at the trailer's back door.

A back-up officer from the Natrona County sheriff's department was summoned, and the two officers made contact with appellant, who invited the officers inside. Appellant, his wife and children appeared to have just gotten out of bed.

Officer Schirlinger told appellant that he was investigating a burglary that had occurred at the Hideaway Bar. The back-up deputy noticed a pair of wet, flat-soled shoes in front of the stove and pointed them out to Officer Schirlinger. Appellant told Officer Schirlinger that those shoes were owned by Phillip Tageant who had been staying with appellant. Initially, appellant told the officer that Tageant had left the night before at 6:00 p.m., but later produced Tageant from a back room. While preparing to go to the Mills police department with the officers, appellant brought out what he claimed to be his only pair of cowboy boots, which were square toed. The officer detected no sign of wetness on appellant's boots.

Approximately five hours later, the Mills police department conducted a search at appellant's residence. As a result of this search, officers seized a rusty tire iron, a pry bar, a screwdriver wrapped in a pair of gloves and a flashlight. None of the stolen items were recovered in the search, although appellant, Tageant, and Mrs. Corson all had freshly opened packs of Marlboro cigarettes. Appellant and Tageant were arrested for burglary on February 6, 1986. On March 3, 1986, a criminal complaint was filed charging appellant with one count of burglary in violation of § 6–3–301(a), (b), W.S.1977. Pursuant to a motion by the State, on March 24, 1986, the court consolidated for trial appellant's case with the case of Phillip Tageant. Both men were convicted by a jury on June 3, 1986.

■ Appellant contends that the prosecution failed to present sufficient evidence to support a conviction and that the trial court erred in refusing to grant appellant's motion for a judgment of acquittal. In addressing a challenge to the sufficiency of the evidence, a reviewing court must examine all the evidence in a light most favorable to the State to determine if there is sufficient evidence to uphold the verdict. *Dangel v. State*, Wyo., 724 P.2d 1145, 1148 (1986), citing *Broom v. State*, Wyo., 695 P.2d 640 (1985). This court does not act as a jury for purposes of deciding criminal

guilt or innocence, but will review the record to determine whether it contains sufficient evidence to support the jury's verdict. *Wells v. State*, Wyo., 613 P.2d 201, 202 (1980). In *Capshaw v. State*, Wyo., 737 P.2d 740, 744–45 (1987), we explained:

"'It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence.'" (Quoting *Broom v. State*, 695 P.2d at 642.)

In the present case, drawing all inferences and resolving all evidentiary conflicts in favor of the State, we must affirm appellant's conviction.

■ Appellant's attack focuses on the evidence of bootprints and burglary tools, which provided the most damaging links between appellant and the crime. The undisputed weaknesses in the bootprint evidence were: (1) no measurements were taken of the prints; (2) the prints appeared to be made from pointed-toe boots rather than the square-toe boots which appellant owned; (3) the investigating officers did not notice any wetness on appellant's boots, although they noticed that Tageant's shoes showed signs of wetness; and (4) the investigating officers did not recognize any prints leading toward the burglary site, but only away from it. In light of this evidence, the jury *could have* drawn inferences which created reasonable doubt that the bootprints were left by appellant. Other evidence, however, provided a reasonable basis for the jury to conclude that the bootprints were indeed those of appellant. (1) Although no measurements were taken, the investigating officer who viewed the comparative sizes of the boots and the prints testified that the prints were consistent with appellant's boots. (2) Even though the bootprints were pointed-toed and appellant's boots were square-toed, the investigating officer testified that a person's gait could explain the disparity. The defense did not discredit this theory, and

we will not conduct our own factual investigation to determine its accuracy. (3) The absence of any sign of wetness on appellant's boots, in contrast to Tageant's shoes, could easily be attributed to differences in composition or finish. The boots and shoes were introduced as exhibits, and the jury was free to draw such inferences. (4) Finally, the absence of tracks leading to the bar could be the result of significant snowfall while appellant and Tageant were inside the bar. Although the bartender testified that the snowfall was subsiding when he left the bar, he could not say whether the snowfall intensified later that night. In resolving all of these conflicts in the evidence, the jury was required to weigh the evidence and draw inferences from it. Resolving all evidentiary conflicts in favor of the State, as we must, we conclude that the record permitted a reasonable inference that the bootprints represented appellant's tracks.

With respect to the burglary tools, an expert from the State crime lab testified that paint found on the pry bar was physically and chemically consistent with the paint on the doorjamb at the burglary site, and metallic flakes on the tire iron were physically similar to the metal of the door's locking mechanism. Thus, the jury could have reasonably concluded that the tools were used in the break-in. Although no fingerprints were identified on the tools, they were found in a cabinet under appellant's kitchen sink, easily within his access. This evidence clearly added strength to the State's case against appellant.

In our opinion affirming the conviction of appellant's codefendant, we made the following assessment of the sufficiency of the evidence:

"The jury had evidence before it of two sets of footprints leading from the bar to the trailer—one of flat-soled shoes and one of cowboy boots. There were no other footprints. On the morning after the burglary, [Tageant's] soggy, flat-soled shoes were discovered in the trailer. Corson owned only a pair of cowboy boots. Both Corson and [Tageant] were present in the trailer the morning after the burglary * * *. Tools suitable for use in such a burglary were found in the trailer in a place accessible to both of the men. The paint chips on the tools were chemically similar to the paint chips taken from the bar.

"On the basis of this evidence, the jury could have found that the tools were used in the burglary, that the footprints were those of [Tageant] and Corson, that Corson attempted to cover up the burglary, that [Tageant] was concealed in the trailer, and that both [Tageant] and Corson had access to the burglary tools. Applying the applicable standard of appellate review, this court finds that there was sufficient evidence for the jury to find [Tageant] guilty beyond a reasonable doubt." *Tageant v. State*, Wyo., 737 P.2d 764, 767 (1987).

These observations apply to this case as well.

In his brief, appellant implies that prosecutorial misconduct occurred during the State's closing argument. Appellant did not structure this issue as an independent ground for reversal but made reference to it as part of his sufficiency of the evidence argument. We have already concluded that the evidence was sufficient to support appellant's conviction; and consequently, we need not address the prosecutorial misconduct argument.

AFFIRMED.

URBIGKIT, J., files a dissenting opinion.

URBIGKIT, Justice, dissenting.

There comes a time for some criminal proceedings when, if proof beyond a reasonable doubt means anything, insufficient evidence exists for submission of a criminal case to the jury or to sustain the conviction if rendered. The Constitution of the United States prohibits the criminal conviction of any person, except upon proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, reh'g denied 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1074–1075, 25 L.Ed.2d 368, 377–78 (1970).

Whatever factors may cause a jury to convict without real evidence may be hard to discern, but rationally reviewed, hard, persuasive evidence of guilt sometimes simply does not exist. This is such a case. Corson was convicted by guilt by association with Phillip Tageant, who was himself convicted on, at best, bare-bones or perhaps bare-feet evidence. *Tageant v. State,* 737 P.2d 764 (Wyo.1987). See *United States v. Fredericks,* 857 F.2d 733 (11th Cir.1988). Corson was convicted by evidence solely related to Tageant, which was wet boots and accommodating footprints.

Even after applying our oft-stated appellate rules for criminal case sufficiency of evidence to sustain the burden of guilt beyond a reasonable doubt by resolution of conflicts or inferences favorable to the State, Corson was not convicted by persuasive evidence. *Goodwine v. State,* 764 P.2d 680 (Wyo.1988). As contemplated by the majority, a number of things could have been the cause for the unavailability of persuasive evidence, but supposition is not evidence of guilt. *Smith v. State,* 40 Wyo. 128, 274 P. 1074 (1929).

Corson was not in the bar early in the evening. *Mulligan v. State,* 513 P.2d 180 (1973), overruled on other grounds sub nom. *Blakely v. State,* 542 P.2d 857 (Wyo. 1975). Tracks found did not match his boots as obtained upon search of his residence. *King v. State,* 718 P.2d 452 (Wyo. 1986). The stolen merchandise was not recovered from him. Cf. *Downs v. State,* 581 P.2d 610 (Wyo.1978). Definitive connection of the tire iron or screwdriver physically to the building entry incident was not made, except as a possibility. *State v. Anderson,* 229 Neb. 436, 427 N.W.2d 770 (1988); *Watson v. State,* 752 S.W.2d 217 (Tex.App.1988). Connection of these normal household tools separately to either the host or the guest was not made, except by

availability. See also the thoughtful and persuasive dissent of Armstrong, D.J., Retired, which more nearly attunes to criteria required by the United States Supreme Court in *Jackson,* 443 U.S. 307, 99 S.Ct. 2781 and *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068 for adequacy of evidence to sustain a conviction for a criminal offense. *Downs,* 581 P.2d at 618. To be repetitive, if Corson had been given a separate trial from his house guest, the viability of the prosecution's case would have been de minimis. Prosecutorial misconduct on final argument singularly relates to the insufficiency of proper evidence. A stated supposition of the prosecutor which lacked total evidentiary support offers justification to me that conjecture rather than evidence contributed to the verdict of guilt.[1] *State v. George,* 40 Wyo. 95, 275 P. 112 (1929); *Gardner v. State,* 27 Wyo. 316, 196 P. 750 (1921); *State v. Bay,* 529 So.2d 845 (La. 1988); *State v. Bearden,* 748 S.W.2d 753 (Mo.App.1988). Prosecutorial misstatement achieves a higher level of concern when evidence of guilt is seriously in question. *Sanborn v. Com.,* 754 S.W.2d 534 (Ky.1988); *State v. Beuke,* 38 Ohio St.3d 29, 526 N.E.2d 274 (1988). As Justice Jerome Frank said in his powerful dissent:

"A keen observer has said that 'next to perjury, prejudice is the main cause of miscarriages of justice.' If government counsel in a criminal suit is allowed to inflame the jurors by irrelevantly arousing their deepest prejudices, the jury may become in his hands a lethal weapon directed against defendants who may be innocent. He should not be permitted to summon that thirteenth juror, prejudice."

*Beuke,* 526 N.E.2d at 293 (quoting from *United States v. Antonelli Fireworks Co.,* 155 F.2d 631, 659 (2nd Cir.), cert. denied 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640,

---

1. As stated by Corson in his brief:
   In closing arguments the State's Attorney claimed that police officers left the trailer at 8:00 a.m., leaving it unattended until the search warrant was executed at 1:00 p.m. that afternoon. He suggested this gave Corson's family an opportunity to "get rid of property." (R.A. Vol. II, p. 206). Examination of testimony fails to reveal any evidence concerning police surveillance at the trailer. There was no testimony suggesting that other persons left the trailer, nor the presence or absence of additional tracks when the officers returned to search. Moreover, there was apparently no attempt by the police at the time of arrest to ascertain whether there were any other individuals present in the trailer.

reh'g denied 329 U.S. 826, 67 S.Ct. 182, 91 L.Ed. 701 (1946)). Cf. *State v. Johnson*, 760 P.2d 760 (Mont.1988), where the evidence was direct and compelling, as clearly different from this case. *State v. Merrill*, 428 N.W.2d 361, 372 (Minn.1988); *State v. Smith*, 755 S.W.2d 757 (Tenn.1988).

In recent past, this court has maintained its historical responsibility in constitutional diligence to provide fairness and due process and to protect the innocent. *Frias v. State*, 722 P.2d 135 (Wyo.1986); *Schmunk v. State*, 714 P.2d 724 (Wyo.1986). Wildly sprung assumptions and possibilities aside, this decision fails to find a level of reliable evidence which should suffice to sustain conviction. *United States v. Samuels*, 801 F.2d 1052 (1986), reh'g denied 808 F.2d 1298 (8th Cir.1987); *Pearson v. State*, 523 N.E.2d 747 (Ind.1988).

Reliability as the test is comprehensively synthesized in *State v. Mussall*, 523 So.2d 1305, 1309–10 (La.1988) (quoting from *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789) in application of the *Jackson* conclusion:

The *Jackson v. Virginia* doctrine involves more than simply applying a fixed standard to measure the simple quantum of the evidence produced in a case. Careful study must be given to both the majority and concurring opinions to fully understand the precise methodology which must be followed to determine objectively whether any rational trier of fact would have had a subjective doubt about the defendant's guilt. First, a review of a criminal conviction record for sufficiency of evidence does *not* require a court to " 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt[.]' " Second, a reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can. Third, the inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.

The principal criterion of a *Jackson v. Virginia* review is *rationality*. This is because under Winship and Jackson Fourteenth Amendment due process demands that in state trials, as has been demanded traditionally in federal trials, a criminal conviction cannot constitutionally stand if it is based on a record from which no *rational* trier of fact could find guilt beyond a reasonable doubt. Accordingly, under the Jackson methodology a reviewing court is required to view the evidence from the perspective of a hypothetical *rational* trier of fact in determining whether such an unconstitutional conviction has occurred. In reviewing the evidence, the whole record must be considered because a *rational* trier of fact would consider all of the evidence, and the actual trier of fact is presumed to have acted *rationally* until it appears otherwise. If *rational* triers of fact could disagree as to the interpretation of the evidence, the *rational* trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, *irrational* decisions to convict will be overturned, *rational* decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. [Emphasis in original and footnotes omitted.]

In giving meaning to the *Jackson* standard, the evidence must be "both substantial and sufficient" to support the determination of guilt beyond a reasonable doubt, *Reilly v. State*, 496 P.2d 899, reh'g denied 498 P.2d 1236 (Wyo.1972); *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973), and may not be based on guessing, speculation or conjecture. *Kogan v. People*, 756 P.2d 945 (Colo.1988); *People v. Urso*, 129 Colo. 292, 269 P.2d 709 (1954). A conviction cannot be based on evidence which is consistent with both innocence and guilt. *United States v. Ortiz*, 445 F.2d 1100 (10th Cir.), cert. denied 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971). Furthermore, opportunity alone cannot suffice to provide a basis for a guilt determination. In *State v. Mor-*

*ris,* 41 Wyo. 128, 155, 283 P. 406, 414 (1929) (quoting from Burrill, Circumstantial Evidence, § 549), in speaking of opportunity, this court discerned that:

"Admitting it proved to have existed, it does not necessarily follow that it was actually taken advantage of by the party shown to have possessed it; or that it was not taken advantage of by another person. In order to give it this effect, where it is solely or chiefly relied on, the circumstances tending to show its existence must be *exclusive* in their operation, by demonstrating that no other person had, or could have had the opportunity possessed by the accused, and that, therefore, by a necessary consequence, none but he could have committed the crime."

Supposition and conjecture aside, this court reaches the stature of lacking viable evidence considered by the Indiana court required in *Cobbs v. State,* 528 N.E.2d 62, 64 (Ind.1988) (quoting from *Baker v. State,* 236 Ind. 55, 62, 138 N.E.2d 641, 645 (1956)), where evidence was lacking " 'so that no reasonable man could say that this issue had been proved beyond a reasonable doubt.' " See *Fredericks,* 857 F.2d 733, where no witness could actually connect the defendant by real evidence as likewise comparable in insufficiency of evidence to convict. If the evidence supports an inference rather than guilt, a finding of guilt beyond a reasonable doubt is not a rational finding. *Watson v. State,* 752 S.W.2d 217, 223 (Tex.App.1988); *Denby v. State,* 654 S.W.2d 457 (Tex.Cr.App.1983).

As here presented, the reconstruction of something that might have been proved and the inference of untoward participation

lacks sufficiency to meet constitutional criteria. *King,* 718 P.2d 452. This is only conjecture. *State v. Rideout,* 450 P.2d 452 (Wyo.1969); *State v. Paulas,* 74 Wyo. 269, 286 P.2d 1041 (1955); *Gardner,* 196 P. 750. A rational and reasoned examiner could not realistically find substantial, credible evidence here sufficient to avoid the jury "arbitrarily convicting of crime." *Reilly,* 496 P.2d at 905.

In reality, Corson was convicted in this case on unproven conjecture by the prosecutor in final argument, the circumstance that Corson exercised a constitutional right not to testify, and by wet boots and footprints of a visitor at his mobile home residence. Cf. *Gardner,* 196 P. 750.[2] This court in past times in the greater perspective of Wyoming law has not been unwilling to discard guess and conjecture and require more. As initiated in the early case of *Palmerston v. Territory,* 3 Wyo. 333, 23 P. 73 (1890) and more recently quoted in dissent by Justice Rose, one of the more informed and thoughtful past jurists of this court, in *Wells v. State,* 613 P.2d 201, 205 (Wyo.1980):

This court had occasion to define the reasonable-doubt standard early in its history. In *Palmerston v. Territory,* 3 Wyo. 333, 23 P. 73, 73 (1890), we took issue with a jury instruction which stated in part that

" '... The proof is to be deemed sufficient when the evidence is sufficient to impress the judgment of ordinarily prudent men with a conviction on which they would act in an important affair of their own.' ..."

---

**2.** As similarly stated to this case, in *Gardner,* 27 Wyo. at 325–26, 196 P. at 752:

The only facts in this case that can even throw suspicion on this defendant, if that can be called a suspicious circumstances, is that he was employed as a farm hand by Mrs. Netterfield, at whose place the stolen wheat was found. It was in evidence that a foot-print was seen in the bin at the Chappell place that was larger than Chappell's foot, and that there was a small heel track as if made by a small-heeled cowboy boot, where the driver of the wagon in which the wheat was taken had gone and gotten some gasoline from a truck

that was in the road on the way to the Netterfield place. But there is nothing in the evidence to show the size of defendant's foot, or that he wore or was seen wearing any such boots, or to connect him with this evidence in any way. There is nothing in the evidence to show that he left the Netterfield ranch on the night of the theft, or that he knew what was in the wagon in which the stolen wheat was found at the Netterfield place the next morning. No conversation or remarks by the defendant that were even suspicious were proven, and no suspicious acts on his part are in evidence.

We pointed out that men of the highest prudence are often forced to choose between alternatives on only a preponderance of the evidence. We then defined the proof-beyond-a-reasonable-doubt standard as:

> "... '[T]he jury must be so convinced by the evidence * * * of the defendant's guilt that a prudent man would feel safe to act upon that conviction in matters of the highest concern and importance to his own dearest personal interests, under circumstances where there was no compulsion resting upon him to act at all.' ...'" Id. at 23 P. 74. [Footnote omitted.]

In this case, conjecture is substituted for certitude about the facts in issue. *State v. Osmus,* 73 Wyo. 183, 276 P.2d 469 (1954); *Morris,* 283 P. 406; *George,* 275 P. 112; *Smith,* 274 P. 1074; *Gardner,* 196 P. 750; *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068. As Chief Justice Blume considered:

> " '[I]t is not enough that the evidence in the case goes to show his guilt, but such evidence must be entirely inconsistent with a reasonable supposition of innocence. Suspicions, however strong, or probabilities, however great, will not be sufficient to justify a conviction, but the evidence, to justify a conviction must be positive, convincing, establishing the defendant guilty of the charge contained in the indictment beyond a reasonable doubt, * * *.' "

*Osmus,* 73 Wyo. at 220, 276 P.2d at 483–84 (quoting from *State v. Walser,* 318 Mo. 853, 1 S.W.2d 147, 151 (1927)).

This conviction lacking that practical, rational and constitutional level of proof should be reversed.